FILED
2022 Dec-23 AM 09:19
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
### NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JUSTIN CELESKI; ASHTON MURDOCK; and RACHEL MARKUM,** on behalf of themselves and others similarly situated | ) ) ) ) ) |  **FILED** DEC 22 2022 **UNITED STATES DISTRICT COURT NORTHERN DISTRICT OF ALABAMA** |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **CIVIL ACTION NO.:** |
| **TOM BROWN'S RESTAURANT AT MADISON, LLC; TOM EUGENE BROWN (individually); and ASHLEY WALKER BROWN (Individually)** | ) ) ) ) ) | |
| **Defendants.** | ) ) | **JURY DEMAND** |

## COLLECTIVE ACTION COMPLAINT

Come now the Plaintiffs Justin Celeski, Ashton Murdock, and Rachel Markum, on behalf of themselves and others similarly situated, and file this action against Defendants Tom Brown's Restaurant At Madison, LLC, Tom Eugene Brown (individually), and Ashley Walker Brown (individually), collectively referred to as "Defendants" and seek to recover damages caused by Defendants' violations of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201 et. Seq. Plaintiffs also seek to recover damages for their state law claims plead herein concerning Defendants' Breach of Contract, Unjust Enrichment, Conversion. Plaintiffs state the

1

following in support of their claims:

## I.   NATURE OF SUIT

1.     The FLSA was passed by Congress in 1938. The principal Congressional purpose in enacting the FLSA was to protect all covered workers from substandard wages and oppressive working hours, labor conditions that are detrimental to maintenance of minimum standards of living necessary for health, efficiency, and general well-being of workers. *Barrentine v. Arkansas-Best Freight System, Inc.*, 450 U.S. 728, 739, 101 S.Ct. 1437, 1444 (1981). The liquidated damage provision of the FLSA constitutes a Congressional recognition that failure to pay statutory minimum on time may be so detrimental to maintenance of minimum standard of living necessary for health, efficiency, and general well-being of workers and to the free flow of commerce, that double payment must be made in event of delay in order to insure restoration of worker to that minimum standard of well-being. *Brooklyn v. Sav. Bank v. O'Neil*, 324 U.S. 697, 707-08, 65 S.Ct. 895, 902 (1945).

2.     This action is brought pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 et seq. and, specifically, the collective action provision of the Act found at §216(b), for equitable and declaratory relief and to remedy violations of the wage provisions of the FLSA by Defendants, who have deprived the named Plaintiffs, and all other similarly situated current and former tipped servers employed

by Defendants, of their lawful wages.

3.     Plaintiffs and all similarly situated former and current tipped employees seek who elect to participate in this action, seek misappropriated tip monies, unpaid wages and overtime compensation, an equal amount of liquidated damages, attorneys' fees, and costs pursuant to 29 U.S.C. §216(b). They also seek to be compensated at or above the minium wage of $7.25 per hour for all non-tip producing tasks performed in excess of the 80/20% rule prescribed by the FLSA. Plaintiffs on behalf of themselves and others similarly situated also seek liquidated damages and reasonable attorneys' fees and costs concerning the same.

4.     This action is brought to recover unpaid compensation, in the form of unpaid wages and overtime, owed to the Plaintiffs, and all similarly situated servers employed by Defendants, pursuant to the FLSA. For up to three years prior to the filing of this complaint, Defendants have and had a uniform policy and practice of requiring employees to participate in an invalid tip share.

5.     Plaintiffs also assert state law claims for damages against the named Defendants, jointly and severally, under Alabama common law.

## III.    JURISDICTION AND VENUE

6.     All events and occurrences giving rise to the causes of action stated herein occurred in and around Madison County, Alabama. Venue is proper in this

judicial district pursuant to 28 U.S.C. § 1391 since all, or at least a substantial part of the events giving rise to Plaintiffs' claims, occurred in and around Huntsville, Alabama, in Madison, County.

7.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331. Venue is proper in the Northern District of Alabama, pursuant to 28 U.S.C. §1391(b).

8.      Jurisdiction in this Court is proper as the claims are brought pursuant to the FLSA, as amended, 29 U.S.C. § 201, et seq., to recover unpaid compensation, statutory wages, overtime compensation, an additional equal amount as liquidated damages and reasonable attorneys' fees and costs.

9.      Defendants are subject to personal jurisdiction in this district as they regularly do business throughout State of Alabama and Madison County for their business, including the one where Plaintiffs and the similarly situated employees of Defendants' were  employed.

10.     At all times relevant to this case, Defendants were and have been an enterprise engaged in commerce as defined by §203(s)(1) of the Act.

11.     The Court also has supplemental jurisdiction over the state claims asserted herein pursuant to 28 U.S.C. §1367.

12.     Due to their enterprise, Defendants are subject to personal jurisdiction

in the State of Alabama for the purpose of this lawsuit.

### III.   PARTIES:

13.     Defendant Tom Brown's Restaurant at Madison, LLC ("Tom Brown's") is an Alabama Limited Liability Company (AL Entity ID No.: 000-584-419) conducting business in the State of Alabama. At all relevant times alleged herein, Tom Brown's was the employer of the named Plaintiffs and all other similarly situated employees.

14.     Tom Brown's business address where Plaintiffs and other similarly situated person were employed is 8141 Hwy 72 W Suite A, Madison, Alabama 35758.

15.     Defendant Tom Eugene Brown ("Mr. Brown") is over the age of 19 and a resident of Madison, Alabama, located in Madison County. Mr. Brown is the owner and a managing member of Tom Brown's and is the husband of Defendant Ashley Walker Brown. At all relevant times alleged herein, Mr. Brown was the employer of the named Plaintiffs and all other similarly situated employees.

16.     Defendant Ashley Walker Brown ("Mrs. Brown") is over the age of 19 and a resident of Madison, Alabama, located in Madison County, with her husband, Mr. Brown. Mrs. Brown is the owner and member of Tom Brown's Restaurant. At all relevant times alleged herein, Mrs. Brown was the employer of the named Plaintiffs

and all other similarly situated employees.

17.   At all times relevant to this action, Mr. and Mrs. Brown were individual residents of the State of Alabama who owned and operated Tom Brown's, and who regularly exercised the authority to do the following during Plaintiffs' employment: (a) hire and fire employees of Tom Brown's; (b) determine the work schedules for the employees of Tom Brown's; and (c) control the contracts, finances and operations of Tom Brown's; (d) were directly responsible and/or instrumental in how Plaintiffs and those similarly situated like Plaintiffs were tipped out as bartenders and servers for Tom Brown's and by virtue of having regularly exercised that authority on behalf of Tom Brown's.

18.   Defendants Mr. Brown and Mrs. Brown were and/or are the employers of Plaintiffs and those similarly situated as defined by 29 U.S.C. §201, et seq.

19.   Plaintiff Justin Celeski ("Mr. Celeski") resides in Huntsville, Alabama. From April 2021 through at least mid January 2022, Mr. Celeski was employed by Defendants as a server at its Madison Location.

20.   Plaintiff Rachel Markum ("Ms. Markum") resides in Huntsville, Alabama. From June 2020 until on or about February 2022, Ms. Markum was employed by Defendants as a server and manager at its Madison Location.

21.   Plaintiff Ashton Murdock ("Ms. Murdock") resides in Huntsville,

Alabama. Ms. Murdock was employed by Defendants as a server at its Madison Location from February 15, 2021 through January 2022.

22. Plaintiffs Celeski and Markum submit their written consent to become a party plaintiff to this action pursuant to 29 U.S.C. §216(b) (Exh. A) and Ms. Murdock's written consent will be submitted upon receipt.

## IV. COLLECTIVE ACTION FACTUAL ALLEGATIONS:

23. Defendants violated the violations of the wage provisions of the FLSA concerning how they compensated Mr. Celeski, Ms. Murdock, Ms. Markum for the times they suffered and/or were permitted to work for Defendants' enterprise.

24. Defendants have deprived Plaintiffs Mr. Celeski, Ms. Murdock, Ms. Markum, and all other similarly situated servers employed by Defendants, of their lawful wages.

25. Mr. Celeski, Ms. Murdock, Ms. Markum and all others similarly situated servers and bartenders employed by Defendants are entitled to recover unpaid compensation in the form of unpaid wages and overtime, pursuant to the FLSA.

26. For up to three years prior to the filing of this complaint, Defendants had and have a uniform policy and practice of requiring Mr. Celeski, Ms. Murdock, Ms. Markum and all others similarly situated servers and bartenders to participate in an invalid tip share.

27.    Upon information and belief, for up to three years prior to the filing of this complaint, Defendants had and have a uniform policy and practice of inflating the income Mr. Celeski, Ms. Murdock, Ms. Markum and all others similarly situated servers and bartenders earned to state and federal tax agencies.

28.    Mr. Celeski, Ms. Murdock, Ms. Markum and all other similarly situated servers employed by Defendants were paid an hourly cash wage of $2.13 per hour.

29.    The Madison location, where Mr. Celeski, Ms. Murdock, Ms. Markum worked, would not open its doors to start serving customers until 4:00 p.m.

30.    Plaintiffs and all similarly situated servers were required to arrive at least 30 to 45 minutes before their shift began and before any customers arrived. Despite this, Plaintiffs were not paid for this time. If Defendants paid Plaintiffs and similarly situated servers during this time, Defendants paid $2.13 per hour and claimed a $5.13 per hour tip credit even though no tips were being generated during this pre-customer/pre-shift time.

31.    At all relevant times, Tom Brown's Handbook required Plaintiffs and similiarly situated servers to arrive at Tom Brown's well before they were scheduled to work to attend pre-shift meetings.

32.    Defendants' pre-shift meetings started 30 minutes before each scheduled shift start time and would last 20 to 30 minutes. Defendants did not pay Plaintiffs and

other similarly situated servers minimum wage for this non-tip producing time. Defendants only paid servers $2.13 per hour and claimed a $5.13 per hour tip credit for this pre-customer serving time even though no tips were being generated.

33.    Often times Plaintiffs and similarly situated servers would have to wait a period of time for a customer to be seated in their section before they would start performing tip producing duties.

34.    During their shift, Plaintiffs, and all similarly situated servers, worked at least three hours performing non-tip producing and janitorial tasks for Defendants. Despite this, Defendants paid Plaintiffs $2.13 per hour for performing non-tip producing and janitorial tasks.

35.    Duties performed during this time included washing windows, cleaning sections, wiping down tables, chairs, window ledges, and baseboards, making tea, which involved retrieving drink containers, tea bags, and sugar from the back and mixing them, setting up tables and server stations which involved filling table caddies with sugar items and condiments, filling salt and pepper shakers, maintaining the salad bar, filling cracker baskets, stocking server stations with to-go items, silverware, napkins, paper towels, and any supplies that would be needed throughout the shift that day/night.

36.    From at least June 2020 to the present, Tom Brown's required Plaintiffs

and other similarly situated servers to perform all pre- and post-shift janitorial tasks without paying them at least minium wage.

37.    Defendants required Plaintiffs and, on information and belief, all similarly situated servers, to participate in a tip share scheme including other employees who did not and do not customarily receive tips from customers.

38.    Defendants required Plaintiffs and, on information and belief, all similarly situated servers, to contribute a portion of their tip earnings to its hourly paid employees/staff such as bussers, kitchen cooks, hostesses.

39.    During the relevant time, Cooks were paid an average starting pay of $10.00-15.00 per hour.

40.    During the relevant time, Bussers were paid an average starting pay of $10.00-15.00 per hour.

41.    During the relevant time, Hostesses were paid an average starting pay of $15.00-20.00 per hour.

42.    Bussers, cooks, and hostesses did not directly interact with customers and worked in the kitchen area, cleaning dishes, transporting trash outside the location, and occasionally restocking.

43.    Defendants also required Plaintiffs and, on information and belief, all similarly situated servers, to contribute a tip out of at least 10% of their alcohol sales

to the bartender working during the same shift.

44.   Plaintiffs and similarly situated servers were required to pay a portion of their cash time earnings based on a percentage of their food sales for that particular shift.

45.   Kitchen staff, bussers, and hostesses are non-tipped employees as they are not employed to engage with the customer, but perform their dish cleaning, seating, kitchen duties, trash disposal, and ice restocking away from customers. Whatever interaction the kitchen staff, bussers, and hostesses have with customers, if any, was incidental.

46.   Kitchen staff, bussers, and hostesses did not regularly receive tips directly from customers nor do they provide "service" to customers in a way that warranted a share of the gratuity left by customers.

47.   Defendants' inclusion of these non-tipped employees in the tip share invalidates the tip share, resulting in the misapplication of the tip credit, as well as the misappropriation of server's tip-earnings.

48.   The Madison Location stops seating customers at 9:00 p.m. Monday through Friday, and 10:00 p.m. on the weekend.

49.   Plaintiffs and, upon information and belief, all other similarly situated servers, were required to perform non-tip producing work after they stopped serving

11

customers. Duties performed during these times included cleaning tables, sweeping and vacuuming floors, cleaning under tables, wiping down tables, organizing chairs, filling condiment dispensers, servicing the wait station, emptying cracker baskets and bringing them to the dishwasher, dismantling and cleaning drink containers which involved bringing them to the back, washing them with bleach and rinsing them, picking up trash, rolling silverware, cleaning coolers, which often involved removing every item from the cooler to wipe it down, and then putting the items back inside.

50.    Plaintiffs and other similarly situated servers were required to wait until the last customer at the entire location left, even if their particular section had no more customers.

51.    Bartenders were required to stay until the last customer left.

52.     Once a shift concluded, Defendants only permitted Plaintiffs and similarly situated servers to leave after the manger performed a final walk-through of Tom Brown's facility.

53.    Plaintiffs and other similarly situated employees spent a substantial time during their shift performing non-tip-producing tasks but they were only paid $2.15 per hour during this time.

54.    Plaintiffs, and other similarly situated servers and bartenders, are not compensated for this time spent waiting on the administration of the tip share.

55.     Defendants' total deductions from employees' tip income enriched them by elevating beyond their approximate financial posture had they employed a valid tip sharing system and/or not employed any tip sharing system.

56.     Plaintiffs and all other similarly situated employees should have been paid at least the minimum cash wage spent in performing the non-tip producing duties.

57.     Defendants improperly claimed the FLSA tip credit (29 U.S.C. § 203(m)) for time spent performing this non tip-producing work.

58.     Time spent on these non-tip producing activities was not occasional, incidental, or insignificant; it was substantial.

59.     On information and belief, all Servers employed by Defendants had these same duties and responsibilities.

60.     On information and belief, all bartenders employed by Defendants had these same duties and responsibilities.

61.     Plaintiffs and, on information and belief, all other similarly situated Servers and bartenders, were subject to Defendants' illegal pay practices, and are similarly situated for purposes of their job duties.

62.     At all times material to this action, Defendants had and have an enterprise engaged in commerce or in the production of goods for commerce as

defined by §203(s)(1) of the FLSA.

63.    Defendant Tom Brown's is an interstate company whose employees are engaged in interstate commerce and whose employees handle and/or work on goods that have been moved in and/or produced in commerce. Its annual gross volume of business exceeds $500,000.00.

64.    At all times relevant to this action, Defendant Tom Brown's was an "employer" of Plaintiffs as defined by §203(d) of the FLSA.

65.    At all times relevant to this action, Mr. Brown was an "employer" of Plaintiffs as defined by §203(d) of the FLSA.

66.    At all times relevant to this action, Defendant Mrs. Brown was an "employer" of Plaintiffs as defined by §203(d) of the FLSA.

67.    At all times material to this action, Plaintiffs, and all others similarly situated Servers and bartenders, were "employees" of Defendant Tom Brown and individual Defendants Mr. and Mrs. Brown as defined by §203(e)(1) of the FLSA. They also worked for Defendants within the territory of the United States within three years preceding the filing of this lawsuit.

68.    The provisions set forth in §207 of the FLSA apply to the Defendants jointly and severally, and the Plaintiffs and all similarly situated servers and bartenders were covered by §207 of the FLSA during their employment with

Defendants.

69.     The Plaintiffs and all similarly situated servers and bartenders employed by Defendants were individually engaged in interstate commerce and/or the production of goods for interstate commerce while working for Defendants. Their interstate commercial activity included, but was not limited to, serving customers who were traveling in interstate commerce, serving food that originated out of state, and processing credit card transactions that crossed state lines.

70.     On information and belief, Defendants have intentionally failed and/or refused to pay Plaintiffs and all other similarly situated servers, and bartenders according to the provisions of the FLSA.

71.     Defendants' systems and practices relating to its invalid tip sharing arrangement resulting in its misappropriation of tip monies, non-payment of wages and overtime to Plaintiffs and all similarly situated servers and bartenders, disqualifies the Defendants from claiming any FLSA overtime exemptions, have existed since at least May 2020.

72.     At all relevant times, Defendants were aware of the requirements of the FLSA and its corresponding regulations and their own violations of the FLSA since at least May 2020.

73.     Despite this knowledge, Defendants failed and continue to fail to pay the

Plaintiffs and similarly situated Servers and bartenders the amount of pay required by the FLSA.

74.     There are numerous similarly situated Servers and bartenders of Defendants who have been improperly compensated in violation of the FLSA and who would benefit from the issuance of Court-Supervised Notice of the present lawsuit and the opportunity to join the present lawsuit.

75.     These similarly situated employees are known to Defendants and are readily identifiable and can be located through Defendants' records - specifically, all Servers, lead servers, and bartenders who have been employed by Defendants and have not been properly compensated would benefit from Court-Supervised Notice and the opportunity to join the present lawsuit and should be so notified.

76.     On information and belief, Defendants have engaged and continue to engage in a widespread pattern and practice of violating the provisions of the FLSA by failing to pay Plaintiffs and all similarly situated Servers and bartenders in accordance with §207 of the FLSA.

77.     On information and belief, Defendants have engaged and continue to engage in a widespread pattern and practice of violating the provisions of the United States Internal Revenue Code by submitting incorrect tax returns to the Internal Revenue Service which inflated the wages Plaintiffs and similarly situated servers

and bartenders earned during the relevant time.

78. As a result of Defendants' violations of the FLSA, Plaintiffs and all other similarly situated Servers and bartenders have suffered damages by failing to receive compensation in accordance with §207 of the FLSA.

79. In addition to the amount of unpaid wages and benefits owed to the Plaintiffs and all other similarly situated Servers and bartenders, they are also entitled to recover an additional equal amount as liquidated damages pursuant to 29 U.S.C. §216(b) and prejudgment interest.

80. On information and belief, Defendants' actions in failing to compensate Plaintiffs and all other similarly situated servers and bartenders in violation of the FLSA, were willful.

81. On information and belief, Defendants have not made a good faith effort to comply with the FLSA.

82. Plaintiffs and all servers and bartenders are also entitled to an award of attorney's fees pursuant to 29 U.S.C. §216(b).

83. Plaintiffs and all other similarly situated servers and bartenders have no plain, adequate or complete remedy at law to redress the wrongs alleged herein and this suit for lost overtime and wages, back-pay, and a declaratory judgment against Defendants is their only means of securing adequate relief.

84.    Plaintiffs and all other similarly situated servers and bartenders are now suffering, and will continue to suffer irreparable injury from Defendants' unlawful conduct as set forth herein unless enjoined by this Court.

85.    Plaintiffs are unable to state the exact number of the class but believe that there are at least fifteen other employees who worked as non-exempt servers and bartenders who received improper compensation as a result of Defendants FLSA violations outlined herein.

86.    Defendants possess all the information needed to readily identify the putative class members of the Section 16(b) collective class which encompasses all hourly servers and bartenders for whom Defendants took a tip-credit deduction over the past three years.

## V.    CAUSES OF ACTION:

<u>COUNT ONE</u>
**DEFENDANTS' VIOLATIONS OF THE FLSA**
**(AGAINST ALL DEFENDANTS)**

Plaintiffs, on behalf of themselves individually and all other similarly situated servers and bartenders, re-allege paragraphs 6-22 and 23-87 as set forth herein.

87.    Plaintiffs and similarly situated servers and bartenders "suffered or permitted to work" by Defendants during the relevant time period of May 2020 to the present.

88.     Plaintiffs and similarly situated servers and bartenders were employees of Defendants.

89.     Defendants are engaged in commerce.

90.     Defendants Tom Brown's, Mr. Brown, and Mrs. Brown employed Plaintiffs and similarly situated servers and bartenders because Defendants permitted them to serve their customers and exerted substantial control over the manner in which the servers and bartenders performed their work.

91.     Defendants required Plaintiffs and other similarly situated bartenders and serves to share a portion of the tip-pool with managers, cooks, hostesses, and bartenders in violation of 29 U.S.C. § 203(m)(2)(B) and 29 C.F.R. 531.52(b)(2).

92.     Plaintiffs and other similarly situated servers and bartenders were considered by Defendants to be "tipped employees."

93.     Defendants paid cash wages of $2.15 per hour, taking a tip credit of $5.10 per hour, to Plaintiffs and other similarly situated servers and bartenders.

94.     During the relevant time, Defendants forced Plaintiffs and other similarly situated servers and bartenders to participate in an unlawful "tip-pool" where Defendants required them to pay a portion of their earned tips to Defendants non-tipped and tipped (bartenders) employees.

95.     Defendants' actions invalidate the tip credit of $5.10.

96.     By failing to pay minimum wage, Defendants violated the Federal Fair Labor Standards Act.

97.     Defendants also required Plaintiffs and other similarly situated servers and bartenders to work non-server tasks at the rate of $2.15 per hour for more than 20% of each scheduled shift.

98.     Defendants also required Plaintiffs and other similarly situated servers and bartenders to arrive prior to their shift and stay after their shift without compensating Plaintiffs and other similarly situated servers and bartenders for this pre- and post-shift time. Plaintiffs and other similarly situated servers and bartenders worked an average of 2.5 to 3.0 hours performing pre- and post-shift tasks for which they received no compensation.

99.     Because of the actions of Defendants, Plaintiffs and other similarly situated servers and bartenders suffered damages within the jurisdictional limits of this Court.

100.    Plaintiffs Mr. Celeski, Ms. Murdock, and Ms. Markum bring this case as a collective action pursuant to §216(b) of the FLSA.

101.    Plaintiffs allege that the FLSA violations were applicable companywide.

102.    Plaintiffs allege further that Defendants had a well known and document companywide policy and practice of FLSA violations.

103. Plaintiffs Mr. Celeski, Ms. Murdock, and Ms. Markum are representatives of those similarly situated individuals who are current or former servers and/or bartending employees of Tom Brown's, Mr. Brown, and Mrs. Brown.

104. The FLSA violations Tom Brown's, Mr. Brown, and Mrs. Brown forced Plaintiffs and other similarly situated servers and bartenders to endure were willful.

**COUNT TWO**
**BREACH OF CONTRACT**
**(AGAINST DEFENDANT TOM BROWN'S)**

Plaintiffs, on behalf of themselves individually and all other similarly situated servers and bartenders re-allege paragraphs numbers 6-87 as set forth herein.

105. Tom Brown's offered to employ Plaintiffs and similarly situated servers and bartenders at an hourly rate of at least $7.25 per hour (minimum wage), plus tips.

106. As Plaintiffs' employer, Tom Brown's assumed the responsibility of recording and compensating Plaintiffs for each overtime hour they worked at the rate of time and one half their negotiated rate.

107. Plaintiffs accepted Tom Brown's offer and agreed to work as servers and bartenders for the an hourly rate of at least $7.25 per hour (minimum wage), plus tips.

108. Based on this arrangement, Tom Brown's and Plaintiffs entered into an at-will employment contract at the negotiated rate.

109. Pursuant to Tom Brown's handbook and employment terms, Plaintiffs

agreed to work as servers and bartenders

110.   From April 2021 through January 2022, Mr. Celeski performed his duties well and without issue.

111.   February 2021 through on or about January 2022, Ms. Murdock performed her duties well and without issue.

112.   From June 2020 to February 2022, Ms. Markum performed her duties well and without issue.

113.   During these respective time periods, Plaintiffs worked at least forty (40)+ hours per week on and off the clock for Tom Brown's enterprise, whereby Tom Brown, Mr. Brown, and Mrs. Brown required Plaintiffs to pool their tips with typically non-tip earning employees as a condition of their employment.

114.   Defendants controlled all aspects of Plaintiffs' accounting, logs, and time-clock. Despite this, Defendants did not pay Plaintiffs for all the hours Plaintiffs worked on-or-off the clock at the rate of at least minimum wage ($7.15 per hour).

115.   Defendants also breached their agreement by failing to pay Plaintiffs at least time and one half the negotiated rate for each hour Plaintiffs worked and/or were permitted to work for Defendants.

116.   As a result of the actions and inactions plead herein, Defendants damaged Plaintiffs by breaching its covenant of good faith and fair dealing by not

paying Plaintiffs based on the negotiated hourly rate, as well as by refusing to pay Plaintiffs for the overtime hours they worked for Defendants' enterprise.

117.   Plaintiffs are entitled to recover compensatory, nominal, punitive, and ordinary damages as a result of Defendants' actions and inaction.

**COUNT THREE**
**UNJUST ENRICHMENT**
**(ALL DEFENDANTS)**

Plaintiffs, on behalf of themselves individually and all other similarly situated servers and bartenders, re-allege paragraphs 6-87 as set forth herein:

118.   Tom Brown's, Mr. Brown, and Mrs. Brown controlled all aspects of Plaintiffs' receipt of compensation, accounting of tips, time-logs, and time-clock. Despite this, Defendants did not pay Plaintiffs for all the hours Plaintiffs suffered or were permitted to work. Additionally, they unlawfully reduced Plaintiffs' compensation by subjecting them to an illegal tip-pool for which Plaintiffs never agreed to participate.

119.   As a result of the actions and inactions plead herein, Defendants have been unjustly enriched by not paying Plaintiffs and similarly situated servers and bartenders their negotiated hourly and statutory hourly rate.

120.   As a result of the actions and inactions plead herein, Defendants have been unjustly enriched by forcing Plaintiffs and similarly situated servers and

bartenders, Defendants' tip-credit employees, to pay a portion of the wages earned by Defendants' hourly/non-tip earning staff.

121.   Defendants should be required to account for all monies spent, profits, and gains which they have obtained or will unjustly obtain in the future at the expense of Plaintiffs and similarly situated servers and bartenders, and a return on monies should be imposed thereon to compensate Plaintiffs and similarly situated servers and bartenders for the loss incurred.

**COUNT FOUR**
**CONVERSION**
**(AGAINST ALL DEFENDANTS)**

Plaintiffs, on behalf of themselves individually and all other similarly situated servers and bartenders, re-allege paragraphs 6-87 as set forth herein:

122.   Tom Brown's, Mr. Brown and Mrs. Brown controlled all aspects of Plaintiffs' receipt of compensation, accounting of tips, time-logs, and time-clock. Despite this, Defendant did not pay Plaintiffs for all the hours Plaintiffs suffered or were permitted to work. Additionally, they unlawfully reduced Plaintiffs' compensation by subjecting them to an illegal tip-pool for which Plaintiffs never agreed to participate.

123.   Defendants converted the tips and compensation earned by Plaintiffs and similarly situated servers and bartenders for their use and benefit without the

24

intention of returning the same.

124.   As a direct and proximate result of Defendants' acts, Plaintiffs and similarly situated servers and bartenders have suffered direct and consequential damages as set forth in the above Statement of Facts.

## VI.   PRAYER FOR RELIEF:

**WHEREFORE**, Plaintiffs, individually and on behalf of all other similarly situated servers and bartenders, pray for the following relief:

a.   Issuance of notice at the earliest possible time that they be allowed to give notice, or that the Court issue such Notice, to all servers who have been employed by Defendants during the three years immediately preceding the filing of this suit, and to all other potential plaintiffs who may be similarly situated, informing them that this action has been filed, the nature of the action, and of their right to opt-into this lawsuit if they were not paid compensation and benefits for all hours worked or tips as compensation pursuant to 29 U.S.C. §216(b);

b.   An order awarding damages in the amount of their respective unpaid compensation, tips, and benefits, plus an equal amount of liquidated damages pursuant to 29 U.S.C. §216(b), and/or prejudgment interest against Defendants jointly and severally;

c.   Judgment against Defendants for an amount equal to Plaintiffs and the class' unpaid back wages at the applicable overtime rate for each hour worked over forty;

d.   Judgment against Defendants for an amount equal to Plaintiffs and the class' unpaid back wages at the applicable regular rate for each hour worked under forty and the tips that were taken;

e.   Judgment against Defendants that their violations of the FLSA were willful;

f.      An equal amount to the wage damages as liquidated damages;

g.      To the extent that liquidated damages are not awarded, an award of prejudgment interest;

h.      Awarding reasonable attorneys' fees, including the costs and expenses of this action against Defendants jointly and severally;

I.      Award such other legal and equitable relief including, but not limited to, any declaratory relief to which they may be entitled against Defendants jointly and severally;

j.      Award Plaintiffs compensatory, incidental, consequential, and punitive damages resulting from Defendants' violations of the Plaintiffs' state law claims plead herein;

**VII.   JURY DEMAND**:

**THE PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY.**

Respectfully Submitted this the 19th day of December, 2022.


                                        _s/ Daniel Patrick Evans_____
                                        Daniel Patrick Evans
                                        ASB-3209-R67G
                                        The Evans Law Firm, P.C.
                                        1736 Oxmoor Road, Suite 101
                                        Birmingham, Alabama 35209
                                        Telephone:  (205) 870-1970
                                        Fax: (205) 870-7763
                                        E-Mail: dpevans@evanslawpc.com
                                        *Attorney for Plaintiffs*

**Plaintiffs' address:**

**c/o The Evans Law Firm, P.C.**

**Defendants' addresses:**

**PLEASE SERVE DEFENDANTS BY CERTIFIED MAIL:**

**Tom Brown's Restaurant at Madison, LLC**
Registered Agent: DAPT Restaurants, LLC
8135 US Highway 72
Madison, AL 35758

**Tom Brown**
122 Cheekwood Drive
Madison, AL 35758

**Ashley Brown**
122 Cheekwood Drive
Madison, AL 35758