FILED
2023 Mar-23  AM 10:51
U.S. DISTRICT COURT
N.D. OF ALABAMA

# IN THE UNITED DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

| | | |
|---|---|---|
| **JUSTIN CELESKI; ASHTON MURDOCK; RACHEL MARKUM, and ASHLEE HENTHORNE on behalf of themselves and others similarly situated** | ) ) ) ) ) | |
| **Plaintiffs,** | ) ) | |
| **vs.** | ) ) | **CIVIL ACTION NO.: 5:22-cv-01600-HNJ** |
| **TOM BROWN'S RESTAURANT AT MADISON, LLC; TOM EUGENE BROWN (individually); and ASHLEY WALKER BROWN (Individually)** | ) ) ) ) ) | |
| **Defendants.** | ) ) | **JURY DEMAND** |

## FIRST AMENDED COLLECTIVE ACTION AND
## CLASS ACTION COMPLAINT

Come now the Plaintiffs Justin Celeski, Ashton Murdock, Rachel Markum, and Ashlee Henthorne on behalf of themselves and others similarly situated, and file this First Amended Complaint against Defendants Tom Brown's Restaurant At Madison, LLC, Tom Eugene Brown (individually), and Ashley Walker Brown (individually), collectively referred to as "Defendants." The Plaintiffs seek to recover damages caused by Defendants for violations of the Fair Labor Standards Act of 1938 (FLSA), 29 U.S.C. §§ 201 *et. seq*., fraudulent violations of the Internal Revenue Code 26

1

U.S.C. § 7434 and state law claims for Breach of Contract, Unjust Enrichment, and Conversion. The named Plaintiffs propose to represent two class actions in this pleading: One for an "Opt In" class to address violations of the FLSA; and a second class under Rule 23 Fed. R. Civ. P.  to address fraudulent violations of the Internal Revenue Code and the state law claims:

**OVERVIEW**

1.    This action brings claims pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. §201 *et seq*., and, specifically, the collective action provision of the Act found at §216(b), for equitable and declaratory relief and to remedy violations of the wage provisions of the FLSA by Defendants, who have deprived the named Plaintiffs, and all other similarly situated current and former tipped servers employed by Defendants, of their lawful wages.

2.    Plaintiffs, and the FLSA class they seek to represent, are all similarly situated former and current tipped employees who may elect to participate in this action here seeking recovery of misappropriated tip monies, unpaid wages and overtime compensation, together with an equal amount of liquidated damages, attorneys' fees, and costs pursuant to 29 U.S.C. §216(b). They also seek to be compensated at or above the minium wage of $7.25 per hour for all non-tip producing tasks performed in excess of the 80/20% rule prescribed by the FLSA.

3.      Plaintiffs seek court approval to assert their FLSA claims on behalf of an FLSA opt-in class in order to include other similarly situated employees who are or were employed at Tom Brown's within the last three years in the capacity of tip credit/earning employees (hereinafter "FLSA Class"). This action seeks to recover unpaid compensation, in the form of unpaid wages and overtime, owed to the Plaintiffs and the putative class from the Defendants. For up to three years prior to the filing of this complaint, Defendants have and had a uniform policy and practice of requiring employees in this class to participate in an invalid tip share.

4.      Plaintiffs also bring claims pursuant 26 U.S.C. § 7434 of the Internal Revenue Code and state law claims against Defendants.  Plaintiffs asserting those claims seek court approval under Rule 23 FRCP to represent a class of similarly situated employees who are or were employed at Tom Brown's within the last three years in the capacity of tip earning employees. (IRC Class)

5.      26 U.S.C. § 7434 provides that where (a) any person willfully files a fraudulent information return with the Internal Revenue Service with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person filing such information return.

6.      Plaintiffs also assert state law claims for damages against the named Defendants, jointly and severally, under Alabama common law for breach of contract,

3

unjust enrichment and conversion.

**JURISDICTION AND VENUE**

7.     All events and occurrences giving rise to the causes of action stated herein occurred in and around Madison County, Alabama. Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 since all, or at least a substantial part of the events giving rise to Plaintiffs, the FLSA Class, and the IRC Class claims, occurred in and around Huntsville, Alabama, in Madison, County.

8.     This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331. Venue is proper in the Northern District of Alabama pursuant to 28 U.S.C. §1391(b).

9.     Jurisdiction in this Court is proper as the claims are brought pursuant to the FLSA, as amended, 29 U.S.C. § 201, *et seq*., to recover unpaid compensation, statutory wages, overtime compensation, an additional equal amounts as liquidated damages, and reasonable attorneys' fees and costs.

10.     Jurisdiction in this Court is also proper because Plaintiffs' claims are brought pursuant to 26 U.S.C. § 7434 to recover statutory and actual damages Plaintiffs and the putative IRC class sustained due to Defendants' filing of fraudulent information returns in violation of the Internal Revenue Code.

11.     Defendants are subject to personal jurisdiction in this district as they

regularly do business throughout the State of Alabama and Madison County for their business, including the one where Plaintiffs, the FLSA Class, and the IRC Class were Defendants' employees.

12.    At all times relevant to this case, Defendants were and have been an enterprise engaged in commerce as defined by §203(s)(1) of the Act.

13.    The Court also has supplemental jurisdiction over the state claims asserted herein pursuant to 28 U.S.C. §1367.

14.    Due to their enterprise in Alabama, Defendants are subject to personal jurisdiction in the State of Alabama for the purpose of this lawsuit.

## III.    PARTIES:

15.    Plaintiff Justin Celeski ("Mr. Celeski") resides in Huntsville, Alabama. From April 2021 through at least mid January 2022, Mr. Celeski was employed by Defendants as a server at Tom Brown's Madison Location.

16.    Plaintiff Rachel Markum ("Ms. Markum") resides in Huntsville, Alabama. From June 2020 until on or about February 2022, Ms. Markum was employed by Defendants as a server at Tom Brown's Madison Location.

17.    Plaintiff Ashton Murdock ("Ms. Murdock") resides in Huntsville, Alabama.  Ms. Murdock was employed by Defendants as a server at Tom Brown's Madison Location from February 15, 2021 through January 2022.

18.    Plaintiff Ashlee Henthorne ("Ms. Henthorne") resides in Athens, Alabama.  Ms. Henthorne was employed by Defendants as a server at Tom Brown's Madison Location from October 2020 through October 2021.

19.    Plaintiffs Celeski and Markum submit their written consent to become party plaintiffs to this action pursuant to 29 U.S.C. §216(b) (Doc. 1-1). Ms. Murdock's and Ms. Henthorne's written consent are attached hereto as Exhibits A and B.

20.    The FLSA Opt-In class includes similarly situated employees who are or were employed at Tom Brown's within the last three years in the capacity of tip credit employees, including servers and bartenders, amongst others.

21.    The IRC class includes similarly situated employees who are or were employed at Tom Brown's within the last three years in the capacity of tip credit employees.

22.    Defendant Tom Brown's Restaurant at Madison, LLC ("Tom Brown's") is an Alabama Limited Liability Company (AL Entity ID No.: 000-584-419) conducting business in the State of Alabama. At all relevant times alleged herein, Tom Brown's was the employer of the named Plaintiffs and all other similarly situated employees.

23.    Tom Brown's business address where Plaintiffs and other similarly

6

situated persons were employed is 8141 Highway 72 W, Suite A, Madison, Alabama 35758.

24.    Defendant Tom Eugene Brown ("Mr. Brown") is over the age of 19 and a resident of Madison in Madison County, Alabama. Mr. Brown is the owner and a managing member of Tom Brown's and is the husband of Defendant Ashley Walker Brown. At all relevant times alleged herein, Mr. Brown, as manager, was deemed the employer of the named Plaintiffs and all other similarly situated employees.

25.    Defendant Ashley Walker Brown ("Mrs. Brown") is over the age of 19 and a resident of Madison in Madison County, Alabama with her husband, Mr. Brown. Mrs. Brown is the owner and member of Tom Brown's Restaurant LLC. At all relevant times alleged herein, Mrs. Brown assisted in management of employees and their schedules and is deemed an employer of the named Plaintiffs and all other similarly situated employees.

**FACTS**

26.    Defendants Tom Brown's, Ashley Brown, and Tom Brown own and operate a restaurant in Madison, Madison County, Alabama, which is an enterprise engaged in interstate commerce whose employees are engaged in interstate commerce and whose employees handle and/or work on goods that have been moved in and/or produced in commerce as defined by §203(s)(1) of the FLSA. Its annual gross volume

of business exceeds $500,000.00.

27.    At all times relevant to this action, Defendant Tom Brown's was an "employer" of Plaintiffs and FLSA class as defined by §203(d) of the FLSA.

28.    At all times relevant to this action, Mr. and Mrs. Brown had and regularly exercised authority to: (a) hire and fire employees of Tom Brown's; (b) determine the work schedules for the employees of Tom Brown's; (c) control the contracts, finances and operations of Tom Brown's; and (d) were directly responsible and/or instrumental in determining how Plaintiffs and those similarly situated like Plaintiffs were paid for tips received as bartenders and servers for Tom Brown's.  The Browns regularly exercised that authority on behalf of Tom Brown's operation.

29.    At all times material to this action, Plaintiffs, and all other similarly situated tip credit employees (the FLSA Class), were "employees" as defined by §203(e)(1) of the FLSA who all worked for Defendants within the territory of the United States within three years preceding the filing of this lawsuit such that §207 of the FLSA apply to the Defendants.

30.    The Plaintiffs and all similarly situated tip credit employees employed by Defendants were individually engaged in interstate commerce and/or the production of goods for interstate commerce while working for Defendants. Their interstate commercial activity included, but was not limited to, serving customers who

8

were traveling in interstate commerce, serving food that originated out of state, and processing credit card transactions that crossed state lines.

## COUNT ONE
## VIOLATION OF FLSA

Plaintiffs incorporate by reference the above and foregoing paragraphs 1 - 30 and make them a part hereof.

31.    Plaintiffs Justin Celeski, Ashton Murdock, Rachel Markum, and Ashlee Henthorne and the FLSA class make their claims under the FLSA seeking approval as an opt-in class action pursuant to the FLSA on behalf of all similarly situated tip credit employees("FLSA Class") who were employed by Tom Brown's at anytime within the past three years.

32.    The Plaintiffs and FLSA Class make claims for violations of the FLSA because they were: (I) not paid the prevailing minimum wage for all hours worked; (ii) unlawfully denied tips and gratuities; (iii) not paid wages for all hours worked; (iv) denied wages due to unlawful deductions; (v) denied spread-of-hours pay; and (vi) not furnished with accurate wage statements or wage notices.

33.    The basic job duties of the FLSA putative Class were the same as or substantially similar to those of the named Plaintiffs, and the FLSA Class members were paid in the same manner and under Defendants' same common policies, plans

and practices as the named Plaintiffs.

34.    The members of the FLSA putative Class, like Plaintiffs, all have been subject to the same unlawful policies, plans and practices of Defendants, including not paying the prevailing minimum wage for all hours worked, unlawfully retaining gratuities, not paying wages for all hours worked, making unlawful deductions, not paying spread-of-hours pay, not furnishing accurate wage statements and not furnishing wage notices.

35.    Defendants were fully aware of the duties performed by Plaintiffs and the FLSA putative Class members, and that those duties were not exempt from the minimum wage and other applicable provisions of the FLSA and/or the federal wage and hour regulations such that Defendants' violations of the FLSA and/or its regulations were willful, repeated, knowing, intentional and without a good faith basis, which significantly damaged Plaintiffs and the FLSA Class members.

36.    Mr. Celeski, Ms. Murdock, Ms. Markum, Ms. Henthorne and all other similarly situated servers and bartenders employed by Defendants are entitled to recover unpaid compensation in the form of unpaid wages and overtime, pursuant to the FLSA.

37.    For up to three years prior to the filing of this complaint, Defendants had and have a uniform policy and practice of requiring Mr. Celeski, Ms. Murdock, Ms.

Markum, Ms. Henthorne and all other similarly situated servers, bartenders, and tip-credit employees to participate in an invalid tip share where their tips were pooled and paid to non-tip producing employees such as bussers, kitchen cooks, hostesses - all of whom were paid higher hourly wages in excess of the minimum wage.

38.    Upon information and belief, for up to three years prior to the filing of this complaint, Defendants also had and have a uniform policy and practice under which they falsely reported inflated income for Mr. Celeski, Ms. Murdock, Ms. Markum, Ms. Henthorne and all other similarly situated servers, bartenders, and tip-credit employees. These false and inflated income reports were made to state and federal tax agencies.

39.    Mr. Celeski, Ms. Murdock, Ms. Markum, Ms. Henthorne and all other similarly situated servers employed by Defendants were paid an hourly cash wage of $2.13 per hour.

40.    The Madison location of Tom Brown's, where Mr. Celeski, Ms. Murdock, Ms. Markum, Ms. Henthorne worked, would not open its doors to start serving customers until 4:00 p.m.

41.    From at least June 2020 to the present, Tom Brown's required Plaintiffs and other similarly situated servers to perform all pre- and post-shift janitorial tasks without paying them at least minium wage.

42.    At all relevant times, Tom Brown's Handbook required Plaintiffs and similiarly situated tip-credit employees to  arrive at Tom Brown's well before they were scheduled to work to attend pre-shift meetings. Plaintiffs and the FLSA Class members were required to arrive at least 30 to 45 minutes before their shift began and before any customers arrived.

43.    Defendants' pre-shift meetings started at least 30 minutes before each scheduled shift start time and would last 20 to 30 minutes. Defendants did not pay Plaintiffs and other similarly situated servers minimum wage for this non-tip producing time. Defendants only paid servers $2.13 per hour and claimed a $5.12 per hour tip credit for this pre-customer serving time even though no tips were being generated.

44.    During their shift, Plaintiffs, and all similarly situated servers, bartenders, and tip-credit employees, worked at least three hours performing non-tip producing and tasks for Defendants. Despite this, Defendants paid Plaintiffs $2.13 per hour for performing non-tip producing and janitorial tasks.

45.    Duties performed during this time included washing windows, cleaning sections, wiping down tables, chairs, window ledges, and baseboards, making tea, which involved retrieving drink containers, tea bags, and sugar from the back and mixing them, setting up tables and server stations which involved filling table caddies

with sugar items and condiments, filling salt and pepper shakers, maintaining the salad bar, filling cracker baskets, stocking server stations with to-go items, silverware, napkins, paper towels, and any supplies that would be needed throughout the shift that day/night. Time spent on these non-tip producing activities was not occasional, incidental, or insignificant; it was substantial.

46.    At the end of each shift, Defendants required the tip-credit employees to share their tips with non-tip credit employees who were making at least minimum wage for each hour worked.

47.    Defendants' inclusion of non-tipped employees in the tip share invalidates the tip share, resulting in the misapplication of the tip credit, as well as the misappropriation of server's tip-earnings.

48.    Defendants also required Plaintiffs and, on information and belief, all similarly situated servers, bartenders, and tip-credit employees, to contribute a portion of their tips from alcohol sales to the bartender working during the same shift.

49.    Defendants required Plaintiffs and similarly situated servers, bartenders, and tip-credit employees to share with their employer a portion of their tips determined by a percentage of their food sales for that particular shift.

50.    The Madison Tom Brown's Location stops seating customers at 9:00 p.m. Monday through Friday and 10:00 p.m. on the weekend.

51.    Plaintiffs and, upon information and belief, all other similarly situated servers, were required to perform non-tip producing work after they stopped serving customers. Duties performed during these times included cleaning tables, sweeping and vacuuming floors, cleaning under tables, wiping down tables, organizing chairs, filling condiment dispensers, servicing the wait station, emptying cracker baskets and bringing them to the dishwasher, dismantling and cleaning drink containers which involved bringing them to the back, washing them with bleach and rinsing them, picking up trash, rolling silverware, cleaning coolers, which often involved removing every item from the cooler to wipe it down, and then putting the items back inside.

52.    Plaintiffs and other similarly situated servers were also required to wait until the last customer at the entire location left, even if their particular section had no more customers.

53.     Once a shift concluded, Defendants only permitted Plaintiffs and similarly situated servers to leave after the manger performed a final walk-through of Tom Brown's facility upon the completion of the assigned post-shift tasks.

54.    Plaintiffs, and other similarly situated tip credit employees, are not compensated for this time spent waiting.

55.    On information and belief, all tip sharing employees employed by Defendants had substantially the same duties and responsibilities and were subject to

Defendants' illegal pay practices.

56.    Defendants improperly claimed the FLSA tip credit (29 U.S.C. § 203(m)) for time spent performing this non tip-producing work. Defendants' systems and practices relating to its invalid tip policy and its misappropriation of tip monies, non-payment of wages and overtime to Plaintiffs and all similarly situated tip sharing employees, disqualifies the Defendants from claiming any FLSA overtime exemptions.

57.    As a result of Defendants' conduct, Defendants are liable to Plaintiffs and the FLSA Class for the full amount of their unpaid minimum wages, the tips or gratuities unlawfully distributed to non-service/non-tipped hourly and salary paid employees, the unpaid wages owed, the unlawfully deducted wages, unpaid spread-of-hours pay, the statutory penalties for failure to distribute accurate wage statements and wage notices, an additional amount as liquidated damages, plus the attorneys' fees and costs incurred by Plaintiff and the FLSA Class.

**Opt-In Class Request**

58.    Certification of the FLSA Class' claims as a class action is the most efficient and economical means of resolving the questions of law and fact common to Plaintiffs' claims and the claims of the FLSA Putative Class. Plaintiffs have standing to seek such relief because of the adverse effect that Defendants' unlawful

compensation policies and practices have had on them individually and on the FLSA Putative Class.

59.    Without class certification, the same evidence and issues would be subject to re-litigation in a multitude of individual lawsuits with an attendant risk of inconsistent adjudications and conflicting obligations. Certification of the FLSA Class is the most efficient and judicious means of presenting the evidence and arguments necessary to resolve such questions for Plaintiff, the FLSA Class and Defendants.

60.    Upon information and belief, fifty-nine (59) employees (current and former) make up the putative FLSA Class. This number is subject to change as discovery progresses and the number is only used for purposes of notice.

61.    All individuals who are or were previously employed by Defendants as servers/bartenders/tip-credit three (3) years prior to the filing of this Complaint to the present that were paid a tipped rate, not paid the full minimum wage during the required weeks, and those who were not paid correctly for all hours worked over forty (40) in a workweek are common members of the FLSA Class.

62.    The putative FLSA Class of at least 59 individuals would benefit from the issuance of Court-Supervised Notice of the present lawsuit and the opportunity to join the present lawsuit.

63.    These similarly situated employees are known to Defendants and are readily identifiable and can be located through information contained in the Defendants' records.

64.    As a result of Defendants' violations of the FLSA, which Plaintiffs allege are willful and not in good faith, Plaintiffs and all other similarly situated Servers have suffered damages by failing to receive compensation in accordance with §207 of the FLSA for which they are also entitled to recover an additional equal amount as liquidated damages pursuant to 29 U.S.C. §216(b), prejudgment interest and attorney's fees.

**CLASS CERTIFICATION OF THE IRC CLASS**

65.    Plaintiffs Celeski, Murdock, Markum, and Henthorne bring their claims in Counts 2, 3, 4, and 5 as a class action pursuant to Fed. R. Civ. P. 23(b)(3) on behalf of themselves individually and on behalf of all tip credit employees Defendants employed within the last three years period (the "IRC Class Period").

66.    Similar to Plaintiffs, IRC Class members also failed to receive all of the wages they should have received in tips. This was also the result of having to share tips with Defendants' non tip credit employees.

67.    Upon information and belief, Defendants willfully filed false information returns concerning the wage income paid to Plaintiffs and the IRC Class members.

68.    These information returns falsely inflated the taxable income received by Plaintiffs and the IRC Class from wages and/or tips, and included amounts Plaintiffs and the IRC Class never received because tips were shared with other non-tip employees.

**Facts for Class Certification**

69.    **Typicality.** Plaintiffs are members of the IRC Class that they seek to represent and their claims are typical of the claims of the IRC Class. The relief Plaintiffs seek for the unlawful policies and practices complained of herein are also typical of the relief which is sought on behalf of the IRC Class.

70.    Defendants are required to file information returns which should detail the correct payments made to their employees such as Plaintiffs and the IRC Class members. Plaintiffs' claims are typical of those of the class who all worked as tip-credit employees for Defendants.    Defendants filed quarterly 941 forms concerning reported wages for Plaintiffs and the IRC Class members and upon information and belief, falsely represented the payments each class member made. Defendants, on behalf of each and every IRC Class member, filed annual 8027, W-2, and W-3 forms concerning Plaintiffs and the IRC Class members which, upon information and belief, misrepresented the payments each class member had received. Each false filing Defendants made to the IRS constitutes a separate occurrence for

which Defendants are liable.

71.    **Adequacy.** Plaintiffs will fairly and adequately represent and protect the interests of the IRC Class and have retained counsel competent and experienced in complex class actions and employment litigation. The combined interests, experience and resources of Plaintiffs and their counsel to litigate the individual and IRC Class claims at issue in this case satisfy the adequacy of representation requirement of Fed. R. Civ. P. 23(a)(4).

72.    **Common questions of law and fact** exist as to the IRC Class members, and predominate over any questions affecting only individual members of the IRC Class. Those common questions include, but are not limited to, the following:

a.    Whether Defendants filed false fraudulent information returns with the IRS as to Plaintiffs and the IRC Class members;

b.    Whether Defendants inflated the reported taxable income for wages and/or tips for the Plaintiffs and IRC class members over what they were actually paid;

c.    Whether Defendants reported that Plaintiffs and the IRC Class were provided wages and/or tips that were paid to others or retained by the Defendants;

d.    Whether Plaintiffs and the IRC Class members suffered increased tax

liability on account of Defendants' filing of false information returns; and

f.   Whether Defendants' violations of the Internal Revenue Code were systematic, willful and repeated.

73.   These common questions of law and fact arise from the same course of events, and each class member will make similar legal and factual arguments to prove liability.

74.   Plaintiffs' interests are co-extensive with those of the IRC Class that they seek to represent in this case. Plaintiffs are willing and able to represent the IRC Class fairly and to vigorously pursue their similar individual claims in this action.

75.   Defendants have acted or refused to act on grounds generally applicable to the IRC Class, making final injunctive and declaratory relief under FRCP Rule 23(b)(2) appropriate with respect to the IRC Class as a whole.

76.   A class action is superior to other available means for the fair and efficient adjudication of Plaintiffs' claims and the claims of the IRC Class members. The clarity of the common issues and class size both indicate that manageability should not be an issue negating class certification.

77.   The cost of proving Defendants' violations of the IRC and the supporting Federal Regulations and the relatively small individual claims makes it impracticable

for the IRC Class members to pursue their claims individually.

78.    Maintenance of a class action under these facts promotes judicial economy by consolidating a large group of potential plaintiffs litigating identical claims. The claims of the IRC Class members interrelate such that the interests of the members will be fairly and adequately protected by the named Plaintiffs.

79.    Additionally, the questions of law and fact common to the IRC Class arise from the same course of events and each class member will make similar legal and factual arguments to prove Defendants' liability.

80.    **Numerosity.** The IRC Class is so numerous that joinder of all members is impracticable. While the exact number of the IRC Class is unknown to Plaintiffs at the present time, upon information and belief, there are at least 59 similarly situated persons who were/are employed by Defendants as tip credit employees and on whose behalf Defendants, upon information and belief, filed false information returns with the IRS during the IRC Class Period.

81.    Plaintiffs are currently unaware of the identities of all the members of the IRC Class. Accordingly, Defendants should be required to provide Plaintiffs with a list of all persons employed by Defendants on whose behalf Defendants filed false information returns during the IRC Class Period, along with their last known addresses, telephone numbers and e-mail addresses, so Plaintiffs can give the IRC

Class notice of this action and an opportunity to make an informed decision about whether to participate in it.

82. **Predominance**: The common issues of law and fact predominate over any individual issues. Each class member's claim is controlled by the IRC and one set of facts that is based on Defendants' fraudulent filing of false information returns with the IRS. Therefore, the damages are eminently certifiable. Even in the absence of any actual damages sustained or demonstrated by a class member, each class member is entitled to a minimum of Five Thousand Dollars ($5,000.00) in statutory damages per occurrence or the actual damages sustained per occurrence, whichever is greater. 26 U.S.C. § 7434 (b)(1)-(3).

83. This action is maintainable as a class action. The prosecution of separate actions by individual members of the class would create a risk of inconsistent or varying adjudications with respect to individual members. This would establish incompatible standards of conduct for Defendants.

84. For each year of Plaintiffs' and the IRC Class members' employment, Defendants, upon information and belief, filed false 8027, W-2, W-3, and 941 forms with the IRS regarding their employment wages that over reported the amount actually paid to Plaintiffs and the amount actually owed to the IRS.

85. Accordingly, the Court should certify the proposed class pursuant to

FRCP 23(b)(3) and 23(b)(2).

## V.    CAUSES OF ACTION:

### COUNT TWO
### DEFENDANTS' VIOLATIONS OF THE
### INTERNAL REVENUE CODE  26 U.S.C. § 7434
### (AGAINST ALL DEFENDANTS)

Plaintiffs incorporate by reference the above and foregoing paragraphs 1 - 30 and make them a part hereof.

86.    Defendants Tom Brown's, Tom Brown, and Ashley Brown were the employers of Plaintiffs and the IRC Class.

87.    Plaintiffs and the IRC Class sue for relief under 26 U.S.C. § 7434.

88.    Pursuant to the IRC, 26 U.S.C. § 7434, Defendants were responsible for submitting accurate wage statements to the Internal Revenue Service for Plaintiffs and the IRC Class members who were all tip credit employees.

89.    26 U.S.C. § 7434 provides that when any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, the other person may bring a civil action for damages against the person filing such information return.

90.    As set forth above, during the IRC Class Period, upon information and belief, Defendants willfully filed multiple false and fraudulent information returns

23

quarterly and annually which inflated the claimed wage payments made to each Plaintiff and the IRC Class members .

91.    Because Plaintiffs' and the IRC Class members' wages were inaccurately inflated and reported by Defendants, their pay stubs/records were also incorrect for tax purposes.

92.    The members of the IRC Class, and named Plaintiffs, were all subjected to Defendants' unlawful filing of fraudulent information returns with the IRS.

93.    Upon information and belief, the amounts reported to the IRS were false because Defendants would report the total amount of tips it attributed to Plaintiffs and each of the members of the IRC Class, even though from that sum the tips actually received had been reduced by sharing the tip pool with non tip paid staff, including but not limited to kitchen chefs, counter chefs, management staff, hostesses, janitorial staff, and other kitchen staff.

94.    As such, the tip wages Defendants reported to the IRS as wages earned by Plaintiffs and each of the members of the IRC Class were false and inaccurate and Defendants knew those figures to be false and inaccurate.

95.    Defendants were responsible for submitting accurate wage statements of their employees' earnings to the IRS including quarterly No. 941 Forms, W-2, W-3, No. 8027 forms annually with respect to each Plaintiffs and the IRC Class

members. However, Defendants still knowingly and willfully filed these fraudulent

W-2 forms with the IRS in violation of 26 U.S.C. § 7434.

96.    Upon information and belief, Defendants reported to the IRS a greater

amount of wages earned by Plaintiffs and members of the IRC Class than they were

actually paid, and as such, Plaintiffs and each of the members of the IRC Class

suffered increased tax liability.

97.    The No. 941, No. 8027, W-2, and W-3 forms constitute separate

"information returns" within the meaning of 26 U.S.C. §§ 7434 and 6724(d)(1)(A).

98.    The filing of each separate informational return containing false and

fraudulent information made by Defendants to the IRS concerning each Plaintiffs' and

the IRC Class members' earnings constitutes a separate occurrence per employee for

purposes of liability under 26 U.S.C. § 7434.

99.    These information returns filed by Defendants (No. 941, No. 8027, W-2,

W-3) falsely and fraudulently reported that taxable income to the Plaintiffs and the

IRC Class members that was never actually paid to them.  Upon information and

belief, these fraudulent reports were made for each quarter and each year for each

Plaintiff and the IRC class members.

100.   As a result, Plaintiffs and the IRC Class suffered damages due to the

increased tax liability, in addition to the confiscation of their tips which were paid to

an unlawful tip pool.

101.    Defendants' violations of 26 U.S.C. § 7434 entitle Plaintiffs and the IRC Class members to recover damages of the greater of: $5,000 per person, per occurrence, or the actual economic damages sustained as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving the deficiencies asserted as a result of such filing), plus reasonable attorneys' fees and costs.

**COUNT THREE**
**BREACH OF CONTRACT**
**(AGAINST DEFENDANT TOM BROWN'S)**

Plaintiffs incorporate by reference the above and foregoing paragraphs 1 - 30 and make them a part hereof.

102.    Tom Brown's employed Plaintiffs and members of the putative claim at an hourly rate of at least $7.25 per hour (minimum wage) to be made up of $2.13 to be paid by the employer plus tips which were guaranteed to pay them at least minimum wage of $7.25 per hour and with a potential  of tips paying them over that amount.

103.    Plaintiffs and the IRC Class members accepted Tom Brown's offer and agreed to work as tip credit employees for an hourly rate of at least $7.25 per hour (minimum wage) pursuant to Tom Brown's handbook and employment terms.

104.   From April 2021 through January 2022, Mr. Celeski performed his duties well and without issue.

105.   February 2021 through on or about January 2022, Ms. Murdock performed her duties well and without issue.

106.   From June 2020 to February 2022, Ms. Markum  performed her duties well and without issue.

107.   From October 2020 through October 2021, Ms. Henthorne performed her duties well and without issue.

108.   During these respective time periods, Plaintiffs and others in the IRC class worked at least forty (40)+ hours per week on- and off-the-clock for Tom Brown's enterprise.

109.   Tom Brown, Mr. Brown, and Mrs. Brown required Plaintiffs and the IRC Class members to pool their tips with non-tip earning employees as a condition of their employment.

110.   Defendants controlled all aspects of accounting, logs, and time-clock for the hours worked by the Plaintiffs and IRC class members. Despite this, Defendants did not pay Plaintiffs and class members for all the hours Plaintiffs worked on-or-off the clock at the rate of at least minimum wage ($7.25 per hour).

111.   Defendants also breached their agreement to pay Plaintiffs and class

members overtime wages at least time and one half the negotiated rate for each hour Plaintiffs and class members worked and/or were permitted to work for Defendants.

112.   As a result of the actions and inactions plead herein, Defendants damaged Plaintiffs and class members by breaching its contract by not paying the negotiated hourly rate and tips, as well as by refusing to pay Plaintiffs and class members for the overtime hours they worked for Defendants' enterprise.

113.   Plaintiffs are entitled to recover compensatory, nominal, punitive, and ordinary damages as a result of Defendants' actions and inaction.

**COUNT FOUR**
**UNJUST ENRICHMENT**
**(ALL DEFENDANTS)**

Plaintiffs incorporate by reference the above and foregoing paragraphs 1 - 30 and make them a part hereof.

114.   Tom Brown's, Mr. Brown, and Mrs. Brown controlled all aspects of Plaintiffs' and class members' compensation, including accounting for tips, time-logs, and time-clock records.   Despite this, Defendants did not pay Plaintiffs or the IRC Class members for all the hours they suffered or were permitted to work. Additionally, they unlawfully reduced Plaintiffs' and the IRC Class members' compensation by subjecting them to an illegal tip-pool for which they never agreed to participate and from which they deducted shares for other non tip earning

employees and for themselves.

115.   As a result of their actions and inactions, Defendants have been unjustly enriched.

116.   Plaintiffs and the IRC Class members demand judgment against all the Defendants for the monies they unjustly obtained from the Plaintiffs.

## COUNT FIVE
### CONVERSION
### (AGAINST ALL DEFENDANTS)

Plaintiffs incorporate by reference the above and foregoing paragraphs 1 - 30 and make them a part hereof.

117.   Tom Brown's, Mr. Brown, and Mrs. Brown controlled all aspects of Plaintiffs' and class members compensation, including accounting of tips, time-logs, and time-clock records.  These Defendants exercised control over Plaintiffs' and class members' compensation and converted the same to their own benefit by subjecting those employees to an illegal tip-pool from which Defendants deducted shares to defray costs of other non-tip earning employees and for themselves.

118.   Defendants converted the tips and compensation earned by Plaintiffs and class members for their use and benefit without the intention of returning the same.

119.   As a direct and proximate result of Defendants' acts, Plaintiffs and class members have been damaged.

## VI.    PRAYER FOR RELIEF:

**WHEREFORE**, Plaintiffs, individually and on behalf of the FLSA and IRC

Class, pray for the following relief:

**Plaintiffs' and the FLSA Class Claims:**

a.      Certify the FLSA claims as an "Opt-In" Class and order the issuance of notice to all tip credit employees who have been employed by Defendants during the three years immediately preceding the filing of this suit, informing them that this action has been filed, the nature of the action, and of their right to opt-into this lawsuit if they were not paid compensation and benefits for all hours worked or tips earned pursuant to 29 U.S.C. §216(b);

e.      Designate the named Plaintiffs as representatives of the FLSA Collective and Plaintiffs' counsel as class counsel;

b.      Award a Judgment in the amount of the Plaintiffs' and class members' respective unpaid compensation, tips, and benefits, plus an equal amount of liquidated damages pursuant to 29 U.S.C. § 260 due to Defendants' wilfulness, and/or pre-judgment interest against Defendants jointly and severally;

c.      Award a Judgment against Defendants for an amount equal to Plaintiffs' and the class members' unpaid back wages at the applicable regular rate for each hour worked under forty and the tips that were taken, as well as wages owed at the overtime rate for each hour worked over forty;

d.      Award reasonable attorneys' fees, including the costs and expenses of this action, against Defendants, jointly and severally, in accordance with 29 U.S.C. § 216(b);

**Plaintiffs IRC and Common Law Claims:**

f.    Certify this action as a class action pursuant to Fed. R. Civ. P. 23(b)(3) for all tip credit employees who have been employed by Defendants during the three years immediately preceding the filing of this suit, designating the named Plaintiffs as representatives of the IRC Class and Plaintiffs' counsel as class counsel;

g.    Award a judgment for compensatory, consequential, and punitive damages against Defendants and in favor of Plaintiffs and the IRC Class, plus such pre-judgment and post-judgment interest as may be allowed by law resulting from Defendants' violations of 26 U.S.C. § 7434,  the IRC and/or its regulations, and;

h.    Award Plaintiffs, the IRC Class and their counsel reasonable attorneys' fees and costs pursuant to 26 U.S.C. § 7434; and

I.    Award a judgment in their favor, and the following relief: (a) any actual damages sustained by Plaintiffs and IRC Class as a proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such filing), or the statutory minimum of $5,000 per violation and occurrence during each relevant year, whichever is greater; (b) a finding by the Court of the correct amount which should have been reported in the information return; (c) reasonable attorneys' fees and costs.

**State Law Claims and Other Relief:**

j.    Award Plaintiffs and similarly situated IRC Class Members such other legal and equitable relief including, but not limited to, any declaratory relief to which they may be entitled against Defendants jointly and severally;

k.    Award Plaintiffs and similarly situated IRC Class Members compensatory, incidental, consequential, and punitive damages resulting from Defendants' violations of the Plaintiffs' state law claims plead

herein;

l.      Issue an order equitably tolling the FLSA and IRC's statute of limitations;

## VII.  JURY DEMAND:

## THE PLAINTIFFS DEMAND A TRIAL BY STRUCK JURY.

Respectfully Submitted

*s/ Daniel Patrick Evans*
Daniel Patrick Evans
ASB-3209-R67G
**G. Daniel Evans**
**ASB-1661-N76G**
The Evans Law Firm, P.C.
1736 Oxmoor Road, Suite 101
Birmingham, Alabama 35209
Telephone:  (205) 870-1970
Fax: (205) 870-7763
E-Mail: dpevans@evanslawpc.com
E-Mail: gdevans@evanslawpc.com
*Attorney for Plaintiffs*

## CERTIFICATE OF SERVICE

I hereby certify that I have this date electronically filed the foregoing First Amended Collective Action and Class Action Complaint with the Clerk of Court using the CM/ECF system which will send notification of such filing to the following on this the 23rd day of March, 2023:

**Counsel For Defendants Tom Brown's Restaurant at Madison, LLC, Tom Brown, and Ashley Brown:**

C. Gregory Burgess, Esq.
Lanier, Ford, Shaver & Payne, P.C.

2101 West Clinton Avenue, Suite 102
Huntsville, Alabama 35805
E-mail: cgb@lanierford.com
Phone: (256) 535-1100

*s/ Daniel Patrick Evans*
Of Counsel