# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## NORTHEASTERN DIVISION

JUSTIN CELESKI, et al.,      )
           )
     Plaintiffs,      )
           )
   vs.         )     Case No. 5:22-cv-01600-HNJ
           )
TOM BROWN'S RESTAURANT   )
AT MADISON LLC, et al.,    )
           )
     Defendants.      )

## MEMORANDUM OPINION AND ORDER

Plaintiffs Justin Celeski, Ashton Murdock, Rachel Markum, and Ashlee Henthorne filed this action on behalf of themselves and all others similarly situated against Defendants Tom Brown's Restaurant at Madison LLC (Tom Brown's), their current or former employer; Tom Brown, the owner and managing member of Tom Brown's; and Ashley Brown, the spouse of Tom Brown. (Doc. 10). Plaintiffs claim Defendants violated the Fair Labor Standards Act (FLSA) because Plaintiffs were "(i) not paid the prevailing minimum wage for all hours worked; (ii) unlawfully denied tips and gratuities; (iii) not paid wages for all hours worked; (iv) denied wages due to unlawful deductions; (v) denied spread-of-hours pay; and (vi) not furnished with accurate wage statements or wage notices." (*Id.* ¶ 32). They also claim Defendants violated 26 U.S.C. § 7434 by filing fraudulent information returns to the Internal Revenue Service (IRS), thereby inflating the claimed wages paid to Plaintiffs and other

putative class members. (*Id.* ¶¶ 87-90). Finally, Plaintiffs assert state law claims for breach of contract, unjust enrichment, and conversion. (*Id.* ¶¶ 102-19).

On July 19, 2024, Plaintiffs filed a motion for collective action certification and court-facilitated notice as to their FLSA claim. (Doc. 49). On November 12, 2024, based upon the parties' agreement, the court granted that motion. (Doc. 73).

On July 16, 2024, Plaintiffs filed a motion to certify a class pursuant to Federal Rule of Civil Procedure 23 as to their 26 U.S.C. § 7434 claim and their state law claims. (Doc. 44). The withdrawal and replacement of Defendants' attorneys delayed briefing on the motion. Defendants filed a response brief on December 16, 2024 (Doc. 74), and Plaintiffs filed a reply on January 13, 2025. (Doc. 78).

As explicated more fully herein, Plaintiffs have demonstrated satisfaction of Federal Rule of Civil Procedure 23(a) and 23(b)(3) as to their proposed class for the § 7434 claim. Accordingly, the court will certify a class of:

> All individuals who worked as a tip credit employee for Tom Brown's Restaurant in Madison and received a W-2 from Tom Brown's Restaurant for tax years 2020 or thereafter which overstated their income because of Tom Brown's policy of sharing their tips with other non tip credit employees.

However, Plaintiffs have not demonstrated satisfaction of Rule 23 as to their proposed class for the state law claims. Accordingly, the court will deny class certification as to the state law claims.

## BACKGROUND

Defendant Tom Brown constitutes the managing member of Tom Brown's, which opened on June 1, 2020, and he manages the restaurant's daily operations. Defendant Ashley Brown also acts a manager of operations at the restaurant, but she does not constitute a member of the LLC.  (Doc. 45-1, at 7-8).[1]  During the relevant time period, the restaurant paid all servers $2.13 per hour, plus tips, and it paid all bartenders $3.13 per hour, plus tips.  It utilized the tip credit provided by the Fair Labor Standards Act to satisfy minimum wage requirements.[2]  It paid all other employees, including hosts, bussers, cooks, and dishwashers at least the required $7.25-per-hour minimum wage. (*Id.* at 11, 23, 112).

Each evening after the restaurant closed, the manager on duty calculated employee tips and performed cash-out operations.  (*Id.* at 108).  Employees did not retain all the tips they received.  Rather, they contributed portions of their tips to a tip

---

[1] Plaintiffs' Amended Complaint alleged Ashley Brown "is the owner and member of Tom Brown's Restaurant LLC," and she "assisted in management of employees and their schedules and is deemed an employer of the Named Plaintiffs and all other similarly situated employees."  (Doc. 10, ¶ 25). However, Tom Brown testified his spouse does not share membership in the LLC, and Plaintiffs have presented no contrary evidence.

[2] The Fair Labor Standards Act (FLSA)

> authorizes the employer to pay [an] employee (1) an hourly wage of $2.13 plus (2) an additional amount in tips that brings the total wage up to the federal minimum wage of $7.25 an hour. 29 U.S.C. § 203(m).  An employer who utilizes an employee's hourly tips to reach the minimum hourly wage due the employee is said to take a "tip credit."

*Malivuk v. Ameripark, LLC*, 694 F. App'x 705, 706-07 (11th Cir. 2017).

pool that benefitted bartenders, hosts, bussers, and, prior to April 2, 2022, other "back of the house" employees including cooks and dishwashers. (*Id.* at 112-14).[3]  The bartenders on duty received ten percent of the servers' collective liquor, beer, and wine sales. (*Id.* at 23-24, 113).  Bussers, hosts, and, prior to April 2, 2022, other "back of the house" employees collectively received two percent of the servers' food sales tips, based upon the number of hours they worked each week. (*Id.* at 23-24, 36, 114).  Bartenders who served food to customers contributed two percent of food sales to the tip pool, just as servers did; however, they did not contribute to the alcohol sales tip pool, of course. (Doc. 45-1, at 34 ("[B]artenders don't . . . tip themselves out.")).

Tom Brown's automatically tracked tips employees received from credit card sales through an electronic point-of-sale (POS) system.  Tipped employees could track their own cash tips on a daily basis using IRS Form 4070A or their own preferred recordkeeping method, and they bore responsibility for reporting their cash tips to Tom Brown's by using IRS Form 4070, submitting other written documentation of the tip amounts, or reporting the tips electronically through the POS system. *See* 26 C.F.R. § 31.6053-1.  Tracking an employee's cash tips depended entirely upon the employee's voluntary reporting; the restaurant had no other means of tracking cash tips, and managers knew that employees do not always report cash tips. (*Id.* at 19-20, 132-33).

---

[3] The United States Department of Labor investigated Tom Brown's in early 2022.  Prior to that investigation, Tom Brown's included "back of the house" employees as beneficiaries of the tip pool. At the direction of the Department of Labor, Tom Brown's began including only bartenders, hosts, and bussers as beneficiaries of the tip pool after April 2, 2022. (Doc. 45-1, at 36-37).

At the end of each shift, the POS system generated a closing receipt based upon each employee's sales and the cash and credit card tips each employee reported electronically or otherwise. The closing receipt separately totaled each employee's food sales and alcohol sales, then it assessed each tipped employee's contribution to the tip pools by calculating two percent of the employee's total food sales and ten percent of the employee's total alcohol sales. The closing receipt also totaled each tipped employee's cash sales and subtracted that amount from the credit card tips the tipped employee received that shift. If the credit card tips exceeded the cash sales, the restaurant paid the employee the difference in cash. If the cash sales exceeded the credit card tips, the employee paid the difference to the restaurant in cash. (*Id.* at 21-24, 132-33; Doc. 45-5, at 14). In addition, Tom Brown's claimed an undisclosed percentage of tipped employees' credit card tips to cover credit card service charge fees. (Doc. 45-1, at 33, 38). The methods for calculating contributions to the tip pools and balancing cash sales against credit card tips applied across the board to all servers. (*Id.* at 27, 34).

Though Tom Brown's deducted tip pool assessments and credit card service fees from servers' pay each shift, it did not deduct those amounts from the total income reported to the IRS on the employee's W-2 form each year. Rather, Tom Brown's reported each tipped employee earned an hourly wage of $2.13 or $3.13 per hour plus the total amount of the credit card tips the employee received. The IRS only learned of the cash tips an employee received, or of the tip pool deductions, if the employee reported those amounts to Tom Brown's on IRS Form 4070, by other written

5

documentation, or through the POS system.  (*Id.* at 49-50).  Tom Brown's did not report the share of the tip pool as income on the W-2 forms of employees such as hosts and bussers, and it paid the tip pool share to those employees in cash.  The restaurant described the tip pool share as "tax free to the back of the house."  (*Id.* at 39; Doc. 45-5, at 19).

Plaintiffs seek to certify a class consisting of "[a]ll individuals who worked as a tip credit employee for Tom Brown's Restaurant in Madison and received a W-2 from Tom Brown's Restaurant for tax years 2020 or thereafter which overstated their income because of Tom Brown's policy of sharing their tips with other non tip credit employees."  (Doc. 46, at 15).

## DISCUSSION

Assessing class certification requires two preliminary inquiries.  First, the Named Plaintiffs must demonstrate they have standing to sue.  *Green-Cooper v. Brinker Int'l, Inc.*, 73 F.4th 883, 888-89 (11th Cir. 2023), *cert. denied sub nom. Brinker Int'l, Inc. v. Steinmetz*, 144 S. Ct. 1457, 218 L. Ed. 2d 689 (2024) (citing *Cordoba v. DIRECTV, LLC*, 942 F.3d 1259, 1264 (11th Cir. 2019)).  The Named Plaintiffs also must satisfy the "implied prerequisite" of establishing ascertainability; that is, they must "establish that their proposed class is 'adequately defined and clearly ascertainable.'"  *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021) (quoting *Little v. T-Mobile USA, Inc.*, 691 F.3d 1302, 1304 (11th Cir. 2012)); *see also id.* (stating that a class representative must satisfy the ascertainability requirement "before the district court can consider whether the class satisfies the

enumerated prerequisites of Rule 23(a).").

If Plaintiffs satisfy those preliminary inquiries, the court next assesses whether Plaintiffs satisfy the requirements of Rule 23(a):

> (1) the class is so numerous that joinder of all members is impracticable [*i.e.,* "numerosity"];
>
> (2) there are questions of law or fact common to the class [*i.e.,* "commonality"];
>
> (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class [*i.e.,* "typicality] ; and
>
> (4) the representative parties will fairly and adequately protect the interests of the class [*i.e.,* "adequacy"].

Fed. R. Civ. P. 23(a).  *See Green-Cooper*, 73 F.4th at 888 (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011)) ("'A party seeking class certification must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove [the existence of the elements of Rule 23].'") (alteration in original).

Plaintiffs also must satisfy one of the requirements of Rule 23(b).  *See Carter v. City of Montgomery*, 108 F.4th 1334, 1341 (11th Cir. 2024) ("First, the case has to meet Rule 23(a)'s requirements . . . .  Second, and separately, the case must satisfy one of several requirements under Rule 23(b)."). Plaintiffs rely upon both subsections (b)(2) and (b)(3).   Under Rule 23(b)(2), the court may certify a class if "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2).  Under Rule 23(b)(3), a court may certify a

class if it

> finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

"The party seeking class certification has a burden of *proof,* not a burden of pleading." *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225, 1234 (11th Cir. 2016) (emphasis in original) (citing *Halliburton Co. v. Erica P. John Fund, Inc.,* 573 U.S. 258, 275 (2014)). Such party "must affirmatively demonstrate his compliance with the Rule – that is, he must be prepared to prove [the existence of the elements of Rule 23]." *Green-Cooper*, 73 F.4th at 888 (alteration in original) (citing *Dukes*, 564 U.S. at 350).

Though the class certification analysis may overlap somewhat with the merits of Plaintiffs' claims, "Rule 23 grants courts no license to engage in free-ranging merits inquiries at the certification stage. Merits questions may be considered to the extent – but only to the extent – that they are relevant to determining whether the Rule 23

prerequisites for class certification are satisfied." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 466 (2013) (citing *Dukes*, 564 U.S. at 351 n.6); *see also Babineau v. Fed. Exp. Corp.*, 576 F.3d 1183, 1190 (11ᵗʰ Cir. 2009) ("While we avoid merits determinations to the extent practicable, this case does require the Court to look beyond the pleadings and examine the parties' claims, defenses, and evidence to ensure that class certification would comport with Rule 23's standards."). "[I]f a question of fact or law *is* relevant to that determination, then the district court has a duty to actually decide it and not accept it as true or construe it in anyone's favor." *Brown*, 817 F.3d at 1234 (emphasis in original) (citations omitted).

## I. AS PLAINTIFFS SATISFIED THEIR BURDEN OF DEMONSTRATING THE REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 23(A) AND RULE 23(B)(3), THE COURT WILL CERTIFY A CLASS AS TO PLAINTIFFS' CLAIM PURSUANT TO 26 U.S.C. § 7434.

As an understanding of Plaintiffs' § 7434 claim may bear upon the class certification inquiry, the court will briefly elucidate that claim.

Title 26 U.S.C. § 7434 provides:

> (a) In general. – If any person willfully files a fraudulent information return with respect to payments purported to be made to any other person, such other person may bring a civil action for damages against the person so filing such return.

> (b) Damages. – In any action brought under subsection (a), upon a finding of liability on the part of the defendant, the defendant shall be liable to the plaintiff in an amount equal to the greater of $5,000 or the sum of –

>> (1) any actual damages sustained by the plaintiff as a

proximate result of the filing of the fraudulent information return (including any costs attributable to resolving deficiencies asserted as a result of such filing),

      (2) the costs of the action, and

      (3) in the court's discretion, reasonable attorneys' fees.

To state a claim under the statute, Plaintiffs must allege "'(1) defendant issued an information return; (2) the information return was fraudulent; and (3) [d]efendant willfully issued such a fraudulent return.'" *Chen v. Wow Rest. TH, LLC*, No. 8:23-CV-1602-VMC-UAM, 2024 WL 1994263, at *2 (M.D. Fla. May 6, 2024) (alteration in original) (citing *Elliott v. Barbeque Integrated, Inc.*, No. 19-62426-CIV-SINGHAL, 2020 WL 3451576, at *2 (S.D. Fla. May 29, 2020); 26 U.S.C. § 7434(a)). Courts widely agree that a W-2 form constitutes an "information return" under the statute. *See id.* at *6 (citations omitted) ("Claims under Section 7434 for improper reporting of income in W-2 forms have been recognized by many courts."). The alleged fraud must concern "'the *amount of payments made*.'" *Id.* at *2 (emphasis in original) (citing *Sokoloff v. Bio World Merch., Inc.*, No. 3:22-CV-12 (CDL), 2022 WL 16857008, at *3 (M.D. Ga. Nov. 10, 2022)).

As for construal of the willfulness and fraud aspects of the statute, a recent decision from the District of Columbia Court of Appeals aptly portrays those terms encompass knowing and reckless conduct. *See Doherty v. Turner Broad. Sys., Inc.*, 72 F.4th 324, 328-30 (D.C. Cir. 2023). That Court stated "the 'common law usage' of willfulness encompasses actions taken either knowingly or in 'reckless disregard of the law,'"

particularly when, as in 26 U.S.C. § 7434, "'willfulness is a statutory condition of civil liability[.]'" *Id.* at 328 (alteration in original) (citing *Safeco Ins. Co. v. Burr*, 551 U.S. 47, 57 (2007); *United States v. Rum*, 995 F.3d 882, 888-89 (11th Cir. 2021)); *see also id.* (citing *Universal Health Servs., Inc. v. United States ex rel. Escobar*, 579 U.S. 176, 187 (2016); *Safeco Ins. Co.,* 551 U.S. at 58) ("'[I]t is a settled principle of interpretation that, absent other indication, Congress intends to incorporate the well-settled meaning of the common-law terms it uses.'"). Moreover, the statute's use of the term "fraudulent" along with "willfully" indicates an intent to adopt the common law meaning of fraud, which encompasses a false statement made "'(1) knowingly, or (2) without belief in its truth, or (3) recklessly, careless whether it be true or false.'" *Id.* at 328 (citations omitted). The court should stop short of requiring "'a voluntary, intentional violation of a known legal duty,'" which reflects the *mens rea* requirement in criminal tax fraud cases, yet proof of willfulness under § 7434 requires more than "mere carelessness or negligence." *Id.* at 329-30 (citations omitted).

Another district court within this Circuit has determined that an employer's practice of including mandatory tip pool sums in an employee's total W-2 earnings presented "a genuine issue of material fact as to whether Defendants willfully issued a fraudulent W-2." *Soliman v. SOBE Miami, LLC*, 312 F. Supp. 3d 1344, 1356-57 (S.D. Fla. 2018) ("Plaintiff testified at her deposition that the amount reported on her 2015 W-2 'is definitely incorrect' because it 'includes the twenty percent and Palace is reporting twenty percent completely. They're not taking out the five percent tip out.

11

The five percent I never make.'").

### A.    Plaintiffs Satisfy the Preliminary Requirements of Standing and Ascertainability.

Defendants do not contend the Named Plaintiffs lack standing to sue, nor do they dispute the Named Plainitffs present a sufficiently ascertainable class.  The court finds Plaintiffs satisfy both preliminary inquiries.

"Article III standing requires that 1) the plaintiff has experienced an injury that is concrete and particularized and actual or imminent, 2) the defendant's conduct is the cause of the plaintiff's injury, and 3) a decision by the court would likely redress the plaintiff's injury." *Green-Cooper,* 73 F. 4th at 889 (citing *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560-61 (1992)).  All Named Plaintiffs allege Tom Brown's employed them as servers.  Further, they all assert Tom Brown's willfully filed false information returns concerning their wages because their W-2 forms included tip income Tom Brown's forced them to share with other non-tipped employees, which resulted in each Named Plaintiff's increased tax liability.   (Doc. 10, ¶¶ 15-18, 22, 67-68, 86, 90, 93, 96).  Those allegations establish the Named Plaintiffs suffered actual, concrete, particularized injuries because of Defendants' conduct.  A judgment on Plaintiffs' claims pursuant to 26 U.S.C. § 7434 would redress their injuries, as the statute provides damages as relief. Accordingly, the Named Plaintiffs satisfy the standing requirement.

The Named Plaintiffs also propose a well-defined, sufficiently ascertainable class. The ascertainability inquiry turns upon the definition of the class.  *Cherry*, 986 F.3d at

1302 (citing *DeBremaecker v. Short*, 433 F.2d 733, 734 (5th Cir. 1970))[4] ("Traditionally, we have collapsed class definition and ascertainability into one inquiry.").  If the class definition depends upon "objective, verifiable criteri[a]," the court can ascertain who belongs to it.  *Rensel v. Centra Tech, Inc.*, 2 F.4th 1359, 1370 (11th Cir. 2021).  If the definition depends on "vague or subjective criteria," the court cannot render such a determination.  *Cherry*, 986 F.3d at 1302 (citing *DeBremaecker*, 433 F.2d at 734).

Plaintiffs' proposed class definition – All individuals who worked as a tip credit employee for Tom Brown's Restaurant in Madison and received a W-2 from Tom Brown's Restaurant for tax years 2020 or thereafter which overstated their income because of Tom Brown's policy of sharing their tips with other non tip credit employees – rests upon objective, verifiable criteria.  The Named Plaintiffs may easily identify other class members by examining Tom Brown's employment records and W-2 submissions. *See Rensel,* 2 F. 4th at 1370 (class membership rested upon the sufficiently identifiable criterion of "having purchased a particular security within a particular date range," which the court could ascertain by examining spreadsheets submitted by the company and other company records).  Indeed, in his responses to Plaintiffs' Requests for Admissions, Defendant Tom Brown admitted that "tip credit employees are identifiable and that Tom Brown's has each tip credit employee's last known address."  (Doc. 45-1, at 95).

---

[4] In *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en banc*), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

**B.      Plaintiffs Satisfy the Requirements of Rule 23(a)**

Defendants do not challenge Plaintiffs' satisfaction of Rule 23(a)'s requirements (*See* Doc. 74, at 9-15 (addressing only the requirements of Rule 23(b)), and the court's independent analysis confirms Plaintiffs have satisfied those requirements.  *See Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1188 (11th Cir. 2003) (citing *Martinez-Mendoza v. Champion Int'l Corp.*, 340 F.3d 1200, 1216 n. 37 (11th Cir. 2003);  *McGowan v. Faulkner Concrete Pipe Co.,* 659 F.2d 554, 559 (5th Cir. 1981)) (Even when the parties do not contest certain elements, "a court nevertheless has the responsibility of conducting its own inquiry as to whether the requirements of Rule 23 have been satisfied in a particular case."); *In re Jan. 2021 Short Squeeze Trading Litig.*, No. 21-2989-MDL, 2023 WL 9035671, at *9 (S.D. Fla. Nov. 13, 2023) ("The Court thus proceeds to evaluate the Rule 23(a) factors, the first two of which are uncontested."); *S. Indep. Bank v. Fred's, Inc.*, No. 2:15-CV-799-WKW, 2019 WL 1179396, at *10 (M.D. Ala. Mar. 13, 2019) (citations omitted) ("Although numerosity is uncontested here, 'the court must nonetheless independently find that the plaintiff has satisfied' each prong of the Rule 23 analysis.").

1.      Plaintiffs Satisfy the Numerosity Requirement.

To satisfy the numerosity requirement, Plaintiffs must demonstrate "the class is so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1). "Practicability of joinder depends on many factors, including, for example, the size of the class, ease of identifying its numbers and determining their addresses, facility of making service on them if joined and their geographic dispersion." *Kilgo v. Bowman*

*Transp., Inc.*, 789 F.2d 859, 878 (11th Cir. 1986).  Though there exists no fixed formula for assessing numerosity, "generally less than twenty-one is inadequate, [and] more than forty adequate, with numbers between varying according to other factors." *Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1553 (11th Cir. 1986) (internal quotes omitted).

Tom Brown's has employed more than 40 tip credit employees since March 23, 2020.  (Doc. 45-1, at 71).  As all such individuals could potentially join the proposed Plaintiff class, that number sufficiently demonstrates numerosity.

### 2.    Plaintiffs Satisfy the Commonality Requirement.

To satisfy the commonality requirement, Plaintiffs must demonstrate "there are questions of law or fact common to the class."  Fed. R. Civ. P. 23(a)(2).  That is, the case "'must involve issues that are susceptible to class-wide proof,'" and "'at least one issue [must exist] whose resolution will affect all or a significant number of the putative class members.'" *Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009) (quoting *Murray v. Auslander*, 244 F.3d 807, 811 (11th Cir. 2001); *Stewart v. Winter*, 669 F.2d 328, 335 (5th Cir. 1982)).  "The threshold of commonality is not high." *Davis v. Mar-Jac Poultry*, No. 6:18-CV-01433-LSC, 2021 WL 2556012, at *9 (N.D. Ala. Mar. 30, 2021) (cleaned up) (citing *Jenkins v. Raymark Indus., Inc.*, 782 F.2d 468, 472 (5th Cir. 1986)).

Plaintiffs' claims in this case satisfy that low bar.  Defendants' alleged practice of requiring tipped employees to share tips with bartenders and non-tipped employees, yet

not deducting the tip-out amounts from employees' taxable income, presents an issue

common to all potential class members.  If Plaintiffs prove that Defendants' practice

violated 26 U.S.C. § 7434, the violation will affect all class members equally.[5]

3.     <u>Plaintiffs Satisfy the Typicality Requirement</u>.

To satisfy the typicality requirement, Plaintiffs must demonstrate "the claims or

defenses of the representative parties are typical of the claims or defenses of the class."

Fed. R. Civ. P. 23(a)(3).

> A class representative satisfies the typicality requirement if "the claims or
> defenses of the class and the class representative arise from the same event
> or pattern or practice and are based on the same legal theory." *Williams*[,
> 568 F.3d at 1357] (quoting *Kornberg v. Carnival Cruise Lines, Inc.*, 741 F.2d
> 1332, 1337 (11th Cir. 1984)).  Put another way, "a class representative must
> possess the same interest and suffer the same injury as the class members."
> *Id.* (quoting *Murray*[, 244 F.3d at 811]).  Although "substantial factual
> differences" between the class representative and members are not
> necessarily preclusive of typicality, there must in such circumstances be a
> "strong similarity of legal theories." *Id.* (quoting *Murray*, 244 F.3d at 811).

*Carter*, 108 F.4th at 1341.  "Like commonality, the test for typicality is not a demanding

one." *Luczak v. Nat'l Beverage Corp.*, 548 F. Supp. 3d 1256, 1265 (S.D. Fla. 2021) (citing

*In re Disposable Contact Lens Antitrust Litig.*, 170 F.R.D. 524, 532 (M.D. Fla. 1996)); *see also*

*Ray v. Jud. Correction Servs., Inc.*, 333 F.R.D. 552, 573 (N.D. Ala. 2019) (same).

Here, the claims of the proposed class and the class representatives arise from

the same practice:  Defendants' alleged practice of requiring tipped employees to share

---

[5] Indeed, in his response to Plaintiffs' Requests for Admissions, Defendant Tom Brown admitted "tip credit employees were paid in the same manner and under [the restaurant's] common policies, plans and practices as the named Plaintiffs."  (Doc. 45-1, at 85).

tips with bartenders and non-tipped employees, yet not deducting the tip-out amounts from employees' taxable income. The same legal theory – violation of 26 U.S.C. § 7434 – governs the analysis for both the class representatives and the proposed class. Though, as discussed separately, Plaintiffs' damages may vary, all class members suffered the same injury as the proposed class representatives – the over-statement of their income on their W-2 forms – and the class representatives and class members all possess the same interest in redressing that injury.

        4.    <u>Plaintiffs Satisfy the Adequacy of Representation Requirement.</u>

To satisfy the adequacy of representation requirement, Plaintiffs must demonstrate "the representative parties will fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(3). The adequacy requirement applies both to the Named Plaintiffs and their attorneys. *London v. Wal-Mart Stores, Inc.*, 340 F.3d 1246, 1253 (11th Cir. 2003) (citing *Amchem Prods., Inc. v. Windsor,* 521 U.S. 591, 626 n. 20 (1997)). The requirement "'encompasses two separate inquiries: (1) whether any substantial conflicts of interest exist between the representatives and the class; and (2) whether the representatives will adequately prosecute the action.'" *Busby v. JRHBW Realty, Inc.*, 513 F.3d 1314, 1323 (11th Cir. 2008) (quoting *Valley Drug Co.*, 350 F.3d at 1189).

There exists no dispute class counsel possess sufficient skill and experience to adequately represent the class. The lead class attorney has practiced law since 1975, and he has successfully represented multiple plaintiff classes. (Doc. 45-19, at 1-2). Other

counsel each have at least a decade of experience practicing law and representing plaintiffs. (*Id.* at 5, 7-8). *See Chianne D. v. Weida*, No. 3:23-CV-985-MMH-LLL, 2024 WL 1743334, at *23 (M.D. Fla. Apr. 23, 2024) (Class counsel provided adequate representation when they had experience litigating the same types of claims in federal court, "as well as experience with class action litigation."). Class counsel have agreed to represent the Plaintiff class on a contingency basis, and they have advanced the costs and expenses of the action. (*Id.* at 2, 5, 8-9).

There also exists no question the class representatives will adequately prosecute the action. Both the Named Plaintiffs and their attorneys have thus far pursued the case with "forthrightness and vigor." *See London*, 340 F.3d at 1253 (citations omitted). Class counsel attest Named Plaintiff Justin Celeski "has demonstrated that he is committed to serve as a representative of the proposed Classes." He "has worked with counsel to develop the facts, he has responded to extensive and multiple written discovery requests, and [he] is committed to testifying at trial." (Doc. 45-19, at 3, 5, 9).

As to a potential conflict of interest between the Named Plaintiffs and other class members:

> Minor differences in the interests of the class representatives and the class are not enough to defeat class certification under the adequacy requirement. [*Valley Drug*, 350 F.3d at 1189]. Instead, only a "fundamental" conflict "going to the specific issues in controversy" can defeat class certification. *Id.* (quotation marks omitted); *see* 1 Newberg § 3:58 ("[N]ot every potential distinction . . . will render the representative inadequate. Only conflicts that are fundamental to the suit and that go to the heart of the litigation prevent a plaintiff from meeting the Rule 23(a)(4) adequacy requirement." (footnote omitted)). A conflict is fundamental

> "where some party members claim to have been harmed by the same
> conduct that benefitted other members of the class." *Valley Drug*, 350 F.3d
> at 1189.  [The Eleventh Circuit] has also recognized that a class action
> "cannot be certified when its members have opposing interests" or
> "where the economic interests and objectives of the named
> representatives differ significantly from the economic interests and
> objectives of unnamed class members." *Id.* at 1189-90 (quotation marks
> omitted).

*In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1275 (11th Cir. 2021);

*see also Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000) ("Thus, the class

includes those who claim harm from the very same acts from which other members of

the class have benefitted."); *Grimes v. Fairfield Resorts, Inc.*, 331 F. App'x 630, 632-33 (11th

Cir. 2007) (upholding district court's finding that class members had opposing interests

when "the same practices Plaintiffs allege devalue putative class members' ownership

interests seem to be viewed as beneficial by a large segment of the class").[6]

As Plaintiffs have defined the proposed class, all class members share common

economic interests and objectives.  The class includes only tip credit employees whose

income Tom Brown's overstated on a W-2 form due to the restaurant's tip-sharing

policy.  Though other employees benefitted from the tip-sharing policy by having their

---

[6] In this fashion, the adequacy of representation requirement tends to relate to the typicality requirement.  *See In re Disposable Contact Lens Antitrust*, 329 F.R.D. 336, 409 (M.D. Fla. 2018) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 626 n. 20 (1997)) ("The adequacy-of-representation requirement tends to merge with the commonality and typicality criteria of Rule 23(a), which serve as guideposts for determining whether . . . . maintenance of a class action is economical and whether the named plaintiff's claim and the class claims are so interrelated that the interests of the class members will be fairly and adequately protected in their absence.") (cleaned up).

income understated,[7] those employees do not fall under the proposed class.

_____

[7] Such employees would include bussers, hosts, and bartenders who received tip-outs from servers, except for those bartenders who may have underreported income due to the tips they shared from food they served to customers seated in the bar area. As discussed in a March 25, 2025, hearing, the tip-out policy may have resulted in Tom Brown's underreporting some bartenders' income to the IRS. Those bartenders would not possess the same economic interests as bartenders whose income Tom Brown's overstated. However, such a divergence of economic interests would not create a fundamental conflict of interest, as any bartenders who experienced underreported income statements would not fall under the definition of the proposed class.

Moreover, any potential conflict of interest between bartenders and servers would arise from bartenders' desire to maintain the status quo of experiencing lower tax liability at servers' expense, a practice that allegedly violates 26 U.S.C. § 7434. Some courts express reluctance to consider a conflict of interest among class members when the conflict arises from some members' desire to continue an unlawful policy. *See J.D. v. Azar*, 925 F.3d 1291, 1317 (D.C. Cir. 2019) (cleaned up) ("Courts have been reluctant to find the class representatives inadequate even if some class members have an explicit desire to maintain the status quo."); *Neese v. Becerra*, 342 F.R.D. 399, 410 (N.D. Tex. 2022) ("In [civil rights cases], courts have been 'reluctant to find the class representatives inadequate' even if 'some class members have an explicit desire to maintain the status quo.'"); *Owen v. Punch Bowl Minneapolis, LLC*, No. 19-CV-955 (NEB/TNL), 2020 WL 8256371, at *5 n.8 (D. Minn. July 17, 2020) ("To the extent that Punch Bowl argues that if its tip-pool is declared unlawful some employees may receive less money in tips, which means they are 'losers' based on the suit, the Court cannot credit this argument. There is no true conflict when some class members benefit from an illegal policy."); *Henderson v. Emory Univ.*, No. 1:16-CV-2920-CAP, 2018 WL 6332343, at *8 (N.D. Ga. Sept. 13, 2018) ("If including [allegedly imprudent investments] constitutes a breach[ of an ERISA Plan's fiduciary duty], each participant has the same legal interest of having the Plans' resulting losses restored and the imprudent investments removed; none of them would have a legal interest in maintaining investments that run afoul of ERISA."); *Clark v. Duke University*, No. 1:16-CV-1044, 2018 WL 1801946, *8 (M.D. N.C. Apr. 13, 2018) ("[N]o class member is entitled to participate in a plan that is run in a way that breaches the fiduciary duties owed to participants as a whole, even if those breaches may have provided an individual benefit to a particular investor."); *Myers v. Jani-King of Philadelphia, Inc.*, No. 09-1738, 2015 WL 1055700, *10 (E.D. Pa. Mar. 11, 2015) ("A number of courts have hesitated to find class representatives inadequate based on some class members preferring that an alleged illegal practice continues."); *Santiago-Ramos v. Energia*, No. CV 11-1987(JAG/SCC), 2014 WL 12726428, at *3 (D.P.R. Mar. 3, 2014) ("[T]he interest of a putative class member in maintaining an allegedly illegal policy simply cannot be the basis for denying class certification."); *Ruggles v. WellPoint, Inc.*, 272 F.R.D. 320, 338 (N.D.N.Y. 2011) ("Adequacy is not undermined where the opposed class members' position requires continuation of an allegedly unlawful practice."); *Srail v. Village of Lisle*, 249 F.R.D. 544, 552 (N.D. Ill. 2008) ("[A] judge may not refuse to certify a class simply because some class members may prefer to leave the violation of their rights unremedied.").

However, the Eleventh Circuit has not explicitly embraced this principle, and this court cannot definitively discern whether the Eleventh Circuit would do so in light of its holdings that divergent economic interests render named plaintiffs inadequate class representatives. *See In re Equifax Inc. Customer Data Sec. Breach Litig.*, 999 F.3d 1247, 1275 (11th Cir. 2021); *Pickett v. Iowa Beef Processors*, 209 F.3d 1276, 1280 (11th Cir. 2000); *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).

Defendants' conduct harmed all tipped employees who experienced overreporting of their income to the IRS in a similar manner, and all tipped employees who experienced such harm hold a similar interest in addressing the harm. Therefore, no fundamental conflicts of interest exist between the Named Plaintiffs and the proposed class.

### C. As Plaintiffs Do Not Seek Class-Wide Injunctive or Declaratory Relief, the Court Cannot Certify a Class Pursuant to Rule 23(b)(2).

Under Rule 23(b)(2), a court may certify a class if, in addition to finding satisfaction of all Rule 23(a) requirements, "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). "Rule 23(b)(2) applies only when a single injunction or declaratory judgment would provide relief to each member of the class." *Dukes*, 564 U.S. at 360. That is, "[t]he key to the (b)(2) class is 'the indivisible nature of the injunctive or declaratory relief warranted – the notion that the conduct is such that it can be enjoined or declared unlawful only as to all of the class members or as to none of them.'" *Id.* (citation omitted). Thus, the Rule does not "authorize class certification when each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant. Similarly, it does not authorize class certification when each class member would be entitled to an individualized award of monetary damages." *Id.* at 360-61 (emphasis in original). Rather, "individualized monetary claims belong in Rule 23(b)(3)." *Id.* at 362.

Plaintiffs, on behalf of the proposed class, request monetary damages for their §

7434 claim.  (Doc. 10, ¶ 101 (pleading requesting monetary damages); *see also id.* at 31

(requesting the court, as relief for the § 7434 claim, to "[a]ward a judgment for

compensatory, consequential, and punitive damages against Defendants and in favor of

Plaintiffs and the IRC Class, plus such pre-judgment and post-judgment interest as may

be allowed by law resulting from Defendants' violations of 26 U.S.C. § 7434, the IRC

and/or its regulations," and to "[a]ward a judgment in their favor, and the following

relief:  (a) any actual damages sustained by Plaintiffs and [the] IRC Class as a proximate

result of the filing of the fraudulent information return (including any costs attributable

to resolving deficiencies asserted as a result of such filing), or the statutory minimum

of $5,000 per violation and occurrence during each relevant year, whichever is greater;

. . . (c) reasonable attorneys' fees and costs.").  As discussed subsequently, if Plaintiffs

demonstrate Defendants' liability under § 7434, Defendants may owe each Plaintiff a

different amount in damages.[8]  As the factfinder must assess Plaintiffs' damages on an

individualized basis, the damages claims do not create a basis for class certification

under Rule 23(b)(2).[9]

---

[8] If any Plaintiffs suffered actual damages in excess of $5,000, they may receive that higher amount, and the recovery could vary from Plaintiff to Plaintiff.  26 U.S.C. § 7434(b)(1).  As discussed subsequently, the differences in damage calculations do not predominate over common issues under Rule 23(b)(3), but they do prevent class certification under Rule 23(b)(2).

[9] The Supreme Court's decision in *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338 (2011), left open the question "whether there are any forms of 'incidental' monetary relief that are consistent with the interpretation of Rule 23(b)(2) . . . announced and that comply with the Due Process Clause."  *Id.* at 366.  Prior to *Dukes*, the Eleventh Circuit "allowed plaintiffs to seek monetary relief through a Rule

Plaintiffs also include a request that may fall under the category of injunctive or declaratory relief: *i.e.,* "a finding by the Court of the correct amount which should have been reported in the information return." (Doc. 10, at 31). However, that amount will vary from employee to employee pursuant to the total tips each employee received and the amounts deducted from each employee for the tip pool. Therefore, even to the extent Plaintiffs lodge claims for injunctive or declaratory relief, the court could not issue such relief on a class-wide basis. Rather, "each individual class member would be entitled to a *different* injunction or declaratory judgment against the defendant," thereby preventing certification pursuant to Rule 23(b)(2). *Dukes*, 564 U.S. at 360.

For these reasons, the court will deny class certification pursuant to Rule 23(b)(2).

---

23(b)(2) injunction class if the monetary relief was 'incidental' to injunctive relief – that is, if it would flow 'automatically' to class members without 'complex individualized determinations.'" *AA Suncoast Chiropractic Clinic, P.A. v. Progressive Am. Ins. Co.*, 938 F.3d 1170, 1174 n.2 (11th Cir. 2019) (quoting *Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001)). Post-*Dukes*, the Eleventh Circuit has expressed reluctance as to whether Rule 23(b)(2) certification may rest upon "incidental" monetary relief. *Id.* (noting the *Dukes* decision "appeared to lower the gate on that pathway to certification but did not fully slam it shut").

Even if incidental monetary damage claims can warrant certification pursuant to Rule 23(b)(2), the court cannot characterize Plaintiffs' monetary damages requests for their § 7434 claim as "incidental" to claims for injunctive or declaratory relief. *See id.* (declining to affirmatively decide whether "incidental" monetary damages claims could support a Rule 23(b)(2) class, as "the plaintiffs' damages claims would not be 'incidental' to injunctive relief"). As discussed in the body, Plaintiffs' request for the court to find the correct amount Defendants should have reported on their information returns will require an individualized calculation not suitable for class-wide relief under Rule 23(b)(2). Therefore, any "incidental" monetary damages would connect to a claim for injunctive or declaratory relief that does not fall under Rule 23(b)(2). In addition, characterizing Plaintiffs' requests for monetary relief as "incidental" proves problematic, as their Complaint overwhelmingly focuses on such requests for monetary relief.

### D.    Plaintiffs Satisfy the Requirements of Rule 23(b)(3).

Pursuant to Rule 23(b)(3), a court may certify a class if, in addition to finding satisfaction of all Rule 23(a) requirements, it

> finds that the questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy. The matters pertinent to these findings include:
>
> (A) the class members' interests in individually controlling the prosecution or defense of separate actions;
>
> (B) the extent and nature of any litigation concerning the controversy already begun by or against class members;
>
> (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and
>
> (D) the likely difficulties in managing a class action.

Fed. R. Civ. P. 23(b)(3).

### 1.    Questions of Law or Fact Common to Class Members Predominate Over Any Questions Affecting Only Individual Members.

As portrayed, Rule 23(b)(3) requires that "questions of law or fact common to class members predominate over any questions affecting only individual members." Fed. R. Civ. P. 23(b)(3).  The "predominance requirement is 'far more demanding'" than Rule 23(a)'s threshold "commonality" requirement.  *Carter,* 108 F. 4th at 1341 (quoting *Amchem Prods., Inc.,* 521 U.S. at 624).

"Common issues of fact and law predominate" within the meaning of Rule 23(b)(3) "if they have a direct impact on every class member[ ]." *Klay*

24

*v. Humana, Inc.*, 382 F.3d 1241, 1255 (11ᵗʰ Cir. 2004) (quotation marks omitted and alteration adopted), *abrogated in part on other grounds by Bridge v. Phoenix Bond & Indem. Co.*, 553 U.S. 639, 128 S. Ct. 2131, 170 L. Ed. 2d 1012 (2008). By contrast, the predominance prerequisite is not satisfied if, "after adjudication of the classwide issues, plaintiffs must still introduce a great deal of individualized proof or argue a number of individualized legal points." *Id.*

[T]he predominance inquiry "requires a pragmatic assessment of the entire action and all the issues involved." [*Cordoba*, 942 F.3d at 1274] (quotation marks omitted). Pertinent considerations include the "claims, defenses, relevant facts, and applicable substantive law" at issue in the case. *Klay*, 382 F.3d at 1254 (quotation marks omitted). Among others, whether the putative class members can show that "they suffered an injury fairly traceable to the defendant's misconduct" – which runs to their standing to sue, their ability to prove a legal violation, and their right to relief – is "a relevant factor that a district court must consider when deciding whether" the predominance requirement is satisfied. *Cordoba*, 942 F.3d at 1273 (emphasis omitted). Additionally, predominance looks to whether "significant questions concerning ultimate liability" remain after the resolution of any common issues. *Vega*[ *v. T-Mobile USA, Inc.*], 564 F.3d [1256,] 1274[ (11ᵗʰ Cir. 2009)].

*Carter,* 108 F. 4th at 1341-42 (first two alterations in original).

Common issues exist when all class members will rely upon the same evidence to prove their claims. In contrast, an individualized issue exists when each class member will need to rely upon his or her own evidence. *Tershakovec v. Ford Motor Co., Inc.*, 79 F.4th 1299, 1306 (11ᵗʰ Cir. 2023) (citing *Brown*, 817 F.3d at 1234). "Common questions 'predominate' within the meaning of Rule 23(b)(3) when the substance and quantity of evidence necessary to prove the class claims won't vary significantly from one plaintiff to another." *Id.* (citing *Brown*, 817 F.3d at 1234). To assess predominance, the court should "'identify the parties' claims and defenses and their elements' and . . . categorize

'these issues as common questions or individual questions by predicting how the parties will prove them at trial.'" *Id.* (citing *Brown,* 817 F.3d at 1234).

As stated previously, success on Plaintiffs' § 7434 claim will require proof that Defendants willfully issued a fraudulent information return. *See Chen*, 2024 WL 1994263, at *2. Plaintiffs contend Defendants required all tipped employees to share their tips with bartenders and non-tipped employees, yet Defendants did not deduct the tip-out amounts from tipped employees' taxable income, thereby resulting in erroneous W-2 forms and increased tax liability. That theory applies to all named Plaintiffs, and testing the theory will directly impact each class member.

Proving that theory also will involve the assessment of mostly common evidence. A factfinder will need to examine the daily closing receipts depicting how much money each tipped employee earned in tips each evening, how much money each tipped employee contributed to the tip pools and to Tom Brown's to cover credit card service fees, and then compare those two foregoing figures to the amounts reported on each tipped employee's W-2. As Defendants paid all tipped employees in the same manner, and they evenly applied the methods for calculating tip pool contributions and balancing cash sales against credit card tips across the board to all servers, the "substance and quantity of evidence necessary to prove the class claims won't vary significantly from one plaintiff to another." *See Tershakovec*, 79 F.4th at 1306. Moreover, few, if any, disputed issues will remain after a factfinder conducts the foregoing analysis. *See Carter*, 108 F. 4th at 1342. Stated differently, assessing Plaintiffs' claims will involve

predominantly common issues.

Furthermore, proving willfulness will involve predominantly common issues due to the uniformities in payment procedures. As established previously, demonstrating willfulness includes proof of knowing or reckless conduct. *See Doherty*, 72 F.4th at 328-30; *see also Rum*, 995 F.3d at 888 ("In civil cases, willfully has traditionally been interpreted to include recklessness."). That formulation constitutes "an objective standard: action entailing an unjustifiably high risk of harm that is either known or so obvious that it should be known." *Id.* at 890.

There exists no evidence the Defendants instituted their payment procedures on an individualized basis. Rather, the Defendants applied the system uniformly to the tipped employees. Hence, assessing whether willfulness underlies the decision to implement the system incites analysis into the Defendants' decision-making vis-à-vis the putative class as a whole, not as to each individual member of the class. That is, the question as to willfulness examines whether the Defendants knew or should have known the tip pool system violated § 7434 by overreporting tipped employees' income.

To the extent individualized issues exist, they pale in comparison to the common issues. As acknowledged, a factfinder will need to assess each tipped employee's W-2 form (and each form generated for each employee in separate years) to determine whether the information reported thereon is fraudulent, and whether Defendants specifically intended to report the fraudulent information. According to Defendants, the tipped employees' tendencies not to report cash tips as income will complicate the

assessment of whether each W-2 correctly stated each employee's income.  Defendants also assert whether each tipped employee submitted accurate reports of their own income will bear relevance to their affirmative defense of unclean hands.

Thus, according to Defendants, for each violation, a factfinder would need to:

(1) review a class member's W-2, (2) confirm the class member's income was accurate, (3) if the class member's income was inaccurate, determine the exact amount of income that should have been reported by the class member, (4) assess whether any information on the W-2 was fraudulent, and (5) assess whether Defendants acted in bad faith to falsify that particular W-2 potentially *forty or more* times if the proposed class is certified.

(Doc. 74, at 12 (emphasis in original)).

In addition, Defendants assert determining an appropriate remedy for any established violations will involve too many individualized issues:

if Plaintiffs prevailed on their claims that Tom Brown's willfully filed incorrect W-2s, corrected W-2s must be filed.[10]  But what is the correct amount of income to report on these W-2s if it is not the tips the servers reported themselves to Tom Brown's?  The accuracy of the W-2s depends almost entirely on the information each server provided (or did not provide) to Tom Brown's.

(*Id.* at 3-4).

Though these issues may bear some relevance, they do not outweigh the significant common issues previously discussed.  Essentially, the statute focuses upon

---

[10] "The decision of the court awarding damages in an action brought under subsection (a) shall include a finding of the correct amount which should have been reported in the information return."  26 U.S.C. § 7434(e).

the liability of the person or entity who files a fraudulent return, which comports with legislative history demonstrating "the reason Congress enacted section 7434 was that some taxpayers may suffer significant personal loss and inconvenience as the result of the IRS receiving fraudulent information returns, which have been filed by persons intent on either defrauding the IRS or harassing taxpayers." *Sims v. UNATION, LLC*, 292 F. Supp. 3d 1286, 1298 (M.D. Fla. 2018) (cleaned up). Defendants suggest that servers' alleged underreporting of cash tips may effectively cancel out Defendants' alleged overreporting of tipped-out income. However, they offer no definitive evidence the tipped employees underreported cash tips. Defendants request tipped employees to report cash tips, and they provide them means of doing so, including Form 4070 and electronic reporting through the POS system. Even so, Defendants acknowledge they possess no means of tracking cash tips that does not rely upon employees' voluntary reports. Similarly, a factfinder will possess no means of accounting for unreported cash tips when determining the amounts Defendants should have reported on Plaintiffs' prior information returns, unless Plaintiffs voluntarily disclose previously unreported amounts.

Moreover, the Eleventh Circuit has expressed reluctance to avoid finding predominance based upon the existence of affirmative defenses against individual class members. *Brown*, 817 F.3d at 1240. "[A]ffirmative defenses are often easy to resolve, . . . and district courts have several tools available to manage them." *Id.* at 1241 (citations omitted). Even so, such defenses can prevent predominance if they "apply to the vast

majority of class members and raise complex, individual questions," or if they are "coupled with several other individual questions." *Id.* (citations omitted).

Demonstrating whether individual tipped employees of Tom Brown's failed to report cash tips (if Defendants can obtain and produce proof of such failures) would not raise complex, individual questions, or coincide with other individual questions, and no evidence exists that the determination would apply to the vast majority of class members. *See Verbal v. Tiva Healthcare, Inc.*, No. 20-60695-CIV, 2021 WL 9527858, at *8 (S.D. Fla. Aug. 19, 2021) (affirmative defenses did not prevent predominance finding when they presented "*central* questions [that] are *the same* for all class members") (emphasis in original); *Cardenas v. Toyota Motor Corp.*, No. 18-CV-22798-CIV-FAM, 2021 WL 6926418, at *22 (S.D. Fla. Aug. 12, 2021) (citing *In re Checking Acct. Overdraft Litig.*, 307 F.R.D. 656, 674 (S.D. Fla. 2015)) ("Where a common course of conduct is shown, . . . unique defenses will rarely predominate sufficient to defeat class certification of their own accord."). If class members demonstrated unclean hands according to Defendants' theory, they all did so through the same actions: failing to report cash tips as income.[11]

---

[11] Moreover, the Supreme Court has approved the IRS employing the "aggregate estimation method" as a means of including tipped employees' cash tip income when calculating whether employers have paid adequate Federal Insurance Contributions Act (FICA) taxes for each employee. *United States v. Fior D'Italia, Inc.*, 536 U.S. 238, 240 (2002). In a case involving a restaurant and its employees, the IRS

> examined the restaurant's credit card slips for the years in question, finding that customers had tipped, on average, 14.49% of their bills in 1991 and 14.29% in 1992. Assuming that cash-paying customers on average tipped at those rates also, the IRS calculated total tips by multiplying the tip rates by the restaurant's total receipts. It

In any event,

"the mere mention of a defense is not enough to defeat the predominance requirement of Rule 23(b)(3)." *Bridging Communities Inc.*[ *v. Top Fin., Inc.*], 843 F.3d [1119,] 1126[ (6ᵗʰ Cir. 2016)] (citations omitted). To prevent "speculation and surmise to tip the decisional scales in a class certification ruling[,]" courts deciding the predominance question should not allow "a possible defense, standing alone [to] automatically defeat predominance." *Id.* at 1125 (citations omitted); *see Gorss Motels, Inc. v. Brigadoon Fitness Inc.*, 331 F.R.D. 355, 360 (N.D. Ind. 2019) (citations omitted) (indicating that the defendant must provide "more than vague assertions about prior permission and the methods used to obtain it"); *Fauley v. Heska Corp.*, 326 F.R.D. 496, 507 (N.D. Ill. 2018) (citations omitted) ("[I]f the defendant fails to set forth specific evidence and instead only makes vague, speculative assertions about the consent, then individualized issues of consent do not predominate.").

*Licari Fam. Chiropractic Inc. v. eClinical Works, LLC*, No. 8:16-CV-3461-MSS-JSS, 2019 WL 7423551, at *7 (M.D. Fla. Sept. 16, 2019) (last three alterations in original); *see also Rivera v. Equifax Info. Servs., LLC*, 341 F.R.D. 328, 345 (N.D. Ga. 2022) (citing *Bridging Communities Inc.,* 843 F.3d at 1125) ("Possible defenses 'standing alone' do not automatically defeat predominance."). Defendants have offered no more than speculation that class members have failed to report cash tips. Thus, the court finds the potential requirement of individualized proof as to affirmative defenses does not predominate over common questions.

Potential differences in calculating damages also do not defeat predominance.

---

then subtracted tips already reported and applied the FICA tax rate to the remainder.

*Id.* at 241. The calculations revealed a substantial amount of unreported tips, and the IRS issued assessments for the previously uncaptured FICA taxes. *Id.* The *Fior D'Italia* case demonstrates that a uniform method exists for assessing unreported cash tip income.

True, if Plaintiffs demonstrate Defendants' liability under § 7434, Defendants may owe each Plaintiff a different amount in damages,[12] and calculation of the "correct amount which should have been reported in the information return" pursuant to § 7434(e) will vary from Plaintiff to Plaintiff. However, those differences will not predominate, as the determination of Defendants' liability will rest almost solely upon the allegedly universally applied policies of paying tipped employees, requiring tip-outs, and failing to deduct tip-outs from employees' taxable income.

Generally, in the Eleventh Circuit, "[d]amages are one among many issues – including, most notably, liability – that are part of the predominance question. Thus 'the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate.'" *Schultz v. Emory Univ.*, No. 23-12929, 2024 WL 4534428, at *5 (11th Cir. Oct. 21, 2024) (quoting *Brown*, 817 F.3d at 1233).

> Although damages often raise numerous "individual" questions, predominance is "a qualitative rather than a quantitative concept. It is not determined simply by counting noses: that is, determining whether there are more common issues or more individual issues, regardless of relative importance." *Parko v. Shell Oil Co.,* 739 F.3d 1083, 1085 (7th Cir. 2014). And, relatively speaking, individual issues of damages are sometimes easy to resolve because the calculations are formulaic. *See Klay,* 382 F.3d at 1259-60. District courts have many tools to decide individual damages: "(1) bifurcating liability and damage trials with the same or different juries; (2) appointing a magistrate judge or special master to preside over individual damages proceedings; (3) decertifying the class after the liability trial and providing notice to class members concerning how they may proceed to prove damages; (4) creating subclasses; or (5) altering or amending the class." *In re Visa Check/MasterMoney Antitrust Litig.,* 280 F.3d

---

[12] If any Plaintiffs suffered actual damages in excess of $5,000, they will receive that higher amount, and the amount could vary from Plaintiff to Plaintiff. 26 U.S.C. § 7434(b)(1).

124, 141 (2d Cir. 2001) (footnote omitted), *abrogated in part on other grounds by In re Initial Pub. Offerings Sec. Litig.,* 471 F.3d 24 (2d Cir. 2006).

*Brown,* 817 F.3d at 1239. Thus, individual issues regarding damages will predominate only when the damages computation "either is (1) too complex and factually specific, or (2) accompanied by significant individual questions surrounding liability." *Schultz,* 2024 WL 4534428, at *5 (citing *Brown*, 817 F.3d at 1239-40).

Calculating the putative class members' damages will not present such complexities or individualized questions. Though each Plaintiff may receive a different amount, the method of calculating damages will remain the same for each Plaintiff, particularly if Plaintiffs seek the statutory penalty of $5,000 per occurrence. Determining the correct amount Defendants should have included on Plaintiffs' information returns also will involve a uniform calculation of deducting the total of recorded tip-pool contributions from Plaintffs' reported income. Readily available information to support those calculations exists in the form of closing receipts, POS records, spreadsheets Tom Brown's regularly generates, and any Form 4070's or other tip income documentation tipped employees provided. Accordingly, potential variations in damages calculations will not prevent a finding of predominance.

If the court later determines damages calculations will require a more complex, individualized assessment, it may pursue options such as modifying or decertifying the class or bifurcating the proceedings. *See Lopez v. Hayes Robertson Grp., Inc.,* No. I3-10004-CIV, 2013 WL 10561294, at *6 (S.D. Fla. Sept. 23, 2013), *amended*, No. I3-10004-CIV,

2013 WL 10568828 (S.D. Fla. Sept. 25, 2013) (citation omitted) ("The main issues here are whether: (1) the $3 per shift deduction reduced Plaintiffs' wage below the required minimum wage and, (2) whether Defendants improperly managed the tip pool at each of their restaurants by first, failing to provide the notice required by law, and second, taking control of the tips, then failing to fully distribute the tip money (retaining some for themselves), or distributing some tip money to non-tipped employees. As noted, these issues are common to all members of the proposed class. No doubt, there are individualized issues, such as the particular category of non-tipped employee who shared in the tip pool. Of course the calculation of damages will also be specific to each Plaintiff, yet this Circuit has joined other courts in finding that 'the presence of individualized damages issues does not prevent a finding that the common issues in the case predominate. . . .'"); *Palomar v. SMC Corp. of Am.*, No. 1:19-CV-04693-RLY-MJD, 2021 WL 5364150, at *8 (S.D. Ind. Sept. 27, 2021) (Predominance inquiry was satisfied in a § 7434 case when defendant "subjected all proposed class members to the same course of conduct," even though defendant argued "the court would need to conduct an individualized inquiry into every proposed class member's W-2 to determine whether anything on that Form was fraudulent," as the question of the defendant's liability would "substantially drive the litigation," and the court could assess individual damages through a bifurcated proceeding if necessary); *Zhu v. Wanrong Trading Corp.*, No. 18-CV-417 (ENV)(MMH), 2024 WL 4351357, at *5 (E.D.N.Y. Sept. 30, 2024) ("Plaintiffs' common factual allegations and common legal theory – that Defendants violated

federal and state wage and hour laws through the implementation of their pay policies at the same meat packaging plants during the relevant period – predominate over any factual or legal variations among Class members, such as their length of employment or total wages owed.").

In summary, though some individualized issues exist, common issues predominate over individual ones.

>    2.    A Class Action Constitutes a Superior Method for Fairly and Efficiently Adjudicating the Controversy.

Rule 23(b)(3) also requires "that a class action [be] superior to other available methods for fairly and efficiently adjudicating the controversy." Thus, the court should assess "'the likely difficulties in managing a class action.'" *Tershakovec,* 79 F.4th at 1316 (quoting Fed. R. Civ. P. 23(b)(3)(D)). The assessment proceeds comparatively.

> [T]hat is, because the superiority requirement of Rule 23(b)(3) turns on whether a class action is better than other available methods of adjudication, Fed. R. Civ. P. 23(b)(3), it involves two forms of comparison. First, would a class action create more manageability problems than its alternatives? *Klay,* 382 F.3d at 1273. And second, how do the manageability concerns compare with the other advantages or disadvantages of a class action? *See id.*

*Cherry,* 986 F.3d at 1304-05; *see also Sacred Heart Health Sys., Inc. v. Humana Mil. Healthcare Servs., Inc.,* 601 F.3d 1159, 1183-84 (11th Cir. 2010) (citing *Klay,* 382 F.3d at 1269) ("The focus of [the superiority] analysis is on 'the relative advantages of a class action suit over whatever other forms of litigation might be realistically available to the plaintiffs.'").

Applying this framework, the court concludes a class action will provide a

superior method for fairly and efficiently adjudicating the controversy. The predominance of common issues over individualized issues weighs heavily in this determination, as the superiority and predominance assessments interrelate.

> [T]he more common issues predominate over individual issues, the more desirable a class action lawsuit will be as a vehicle for adjudicating the plaintiffs' claims," . . . both relative to other forms of litigation such as joinder or consolidation, and in absolute terms of manageability . . . . The converse is also true: the less common the issues, the less desirable a class action will be as a vehicle for resolving them.

*Sacred Heart Health Sys., Inc.*, 601 F.3d at 1184 (citations omitted); *see also Williams*, 568 F.3d at 1358 ("If a district court determines that issues common to all class members predominate over individual issues, then a class action will likely be more manageable than and superior to individual actions.").

The Rule 23(b)(3) factors also weigh in favor of finding superiority. First, the class members do not possess a strong interest in individually controlling the prosecution of separate actions. *See* Fed. R. Civ. P. 23(b)(3)(A). Class membership and representation by class counsel will favor Plaintiffs who seek only statutory recovery, as the relatively low statutory damage amount may not motivate individual employees to file separate actions, and it may deter attorneys from representing such individuals. *See Reynolds v. Progressive Direct Ins. Co.*, 346 F.R.D. 120, 138 (N.D. Ala. 2024) (considering the size of individual plaintiffs' potential recovery in assessing superiority); *Doe v. MG Freesites, LTD*, 707 F. Supp. 3d 1157, 1184 (N.D. Ala. 2023) (considering the parties' relative resources). Defendants have not asserted any counterclaims. (Docs. 14-16).

*See Heaven v. Tr. Co. Bank*, 118 F.3d 735, 738 (11th Cir. 1997) (considering that some class members' exposure as counterclaim defendants could exceed their recovery of statutory penalties as class members, thereby compromising their interest in individually controlling their own cases).  And, the existence of common issues of fact and law lessen the need for each class member to individually control his or her own case. *Compare Belin v. Health Ins. Innovations, Inc.*, 337 F.R.D. 544, 558-59 (S.D. Fla. 2021) (existence of substantial common factual issues supported a finding of superiority), with *Mills v. Foremost Ins. Co.*, 269 F.R.D. 663, 680-81 (M.D. Fla. 2010) (potential class members possessed interest in individually controlling the litigation due to the "individualized inquiries and proof that will be necessary to litigate [their] claims).

Second, there exists no indication the proposed class members have commenced other litigation, or that another party has commenced litigation against them.  *See* Fed. R. Civ. P. 23(b)(3)(B).

Third, this district presents a desirable forum for the litigation, as Defendants situate in the district, all potential class members worked for Defendants in the district, many potential class members may still reside in the district, and class counsel practice in the district.  *See Doe*, 707 F. Supp. 3d at 1185 ("Turning to the third factor, this forum certainly seems desirable because Plaintiff is an Alabama resident, the actions giving rise to the claims occurred in this state, and at least some Plaintiff's lawyers are local."); *Napoles-Arcila v. Pero Fam. Farms, LLC*, No. 08-80779-CIV, 2009 WL 1585970, at *9 (S.D. Fla. June 4, 2009) (district presented a desirable forum when Defendant

maintained headquarters there and the cause of action arose there).

Fourth, managing a class action will not present any unusual difficulty. *See* Fed. R. Civ. P. 23(b)(3)(D). The existence of predominantly common issues weighs heavily in favor of finding manageability. *Compare Smith v. Triad of Alabama, LLC*, No. 1:14-CV-324-WKW, 2017 WL 3816722, at *2 (M.D. Ala. Aug. 31, 2017) (quoting *Williams*, 568 F.3d at 1358) ("[B]ecause predominance of common issues makes class resolution more desirable, a court 'would be hard pressed to conclude that a class action is less manageable than individual actions' after finding predominance."), *with Keleceny v. Chevron, U.S.A., Inc.*, 262 F.R.D. 660, 677 (S.D. Fla. 2009) ("The numerous individual issues that predominate in this case render it unwieldy and unmanageable as a class action."). As previously discussed, identifying class members in this case will not present an extraordinary challenge. *See Cherry*, 986 F.3d at 1303-04 (citing *Briseno v. ConAgra Foods, Inc.*, 844 F.3d 1131, 1126 (9th Cir. 2017)) ("A difficulty in identifying class members is a difficulty in managing a class action.").

Defendants argue that certifying a class would cause manageability problems because "a jury would be required to individually review over forty W-2s," which "would require significant time and judicial resources and would most certainly prevent any efficient adjudication of these claims . . . ." (Doc. 74, at 13-14). First, the evidence indicates the damage calculations involve the straightforward practice of subtracting recorded tip pool amounts from W2 reported income, which one presumes the Plaintiffs will attempt to present via appropriate exhibits conforming to Federal Rule

of Evidence 1006. Furthermore, even if adjudicating the claims would entail such individualized assessments, the court cannot discern how one factfinder assessing W-2's for forty-plus individuals would adjudicate the case less efficiently than more than forty-plus factfinders each assessing pertinent W-2s in separate trials. *See Doe*, 707 F. Supp. 3d at 1185 (weighing the burden of conducting multiple trials against the burden of identifying class members and calculating individual damages).

For all the foregoing reasons, the court finds Plaintiffs have satisfied the requirements of Rule 23(a), as well as the predominance and superiority requirements of Rule 23(b)(3). Accordingly, the court will certify the requested class pursuant to Rule 23(b)(3) as to Plaintiffs' claims under 26 U.S.C. § 7434.

## II. PLAINTIFFS HAVE NOT SATISFIED THEIR BURDEN OF DEMONSTRATING THE REQUIREMENTS OF FEDERAL RULE OF CIVIL PROCEDURE 23(A) AND RULE 23(B)(3) AS TO THEIR STATE LAW CLAIMS.

Plaintiffs' brief in support of class certification states their "Rule 23 class claims are made under Counts 2 – Title 26 U.S.C. § 7434; Count 3 – Breach of Contract; Count 4 – Unjust Enrichment; and Count 5 – Conversion," as "[t]he same core facts supply the basis for each of these claims and for certification under Rule 23." (Doc. 46, at 14). However, Plaintiffs' brief presents no substantive argument regarding certification of a class as to the state law claims; rather, it focuses on the § 7434 claim.[13]

---

[13] In addition, though Defendants' response brief argued Plaintiffs' state law claims did not warrant class certification (Doc. 74, at 15-16), Plaintiffs' reply brief did not address those arguments. Rather, Plaintiffs' reply brief only summarily reiterated that the facts supporting the § 7434 claim also "provide

Moreover, as discussed, Plaintiffs seek to certify a Rule 23 class consisting of "[a]ll individuals who worked as a tip credit employee for Tom Brown's Restaurant in Madison *and* received a W-2 from Tom Brown's Restaurant for tax years 2020 or thereafter which overstated their income because of Tom Brown's policy of sharing their tips with other non tip credit employees." (*Id.* at 15) (emphasis added). That proposed class represents individuals who have suffered harm as a result of Defendants' violations of § 7434, yet Plaintiffs' state laws focus on different conduct by Defendants.

For a breach of contract claim under Alabama law, Plaintiffs must establish: "'(1) the existence of a valid contract binding the parties; (2) the plaintiff's performance under the contract; (3) the defendant's nonperformance; and (4) damages.'" *Shoals Extrusion, LLC v. Beal*, 288 So. 3d 448, 451 (Ala. 2019) (quoting *Capmark Bank v. RGR, LLC*, 81 So.3d 1258, 1267 (Ala. 2011)). To support their breach of contract claim, Plaintiffs allege they formed a contract with Defendants to work as tip credit employees for an hourly rate of at least the minimum wage of $7.25 per hour. (Doc. 10, ¶ 103). Though Plaintiffs performed their duties under the contract (*Id.* ¶¶ 104-07), Defendants allegedly failed to perform their contractual duties because they did not pay Plaintiffs at least $7.25 per hour. (*Id.* ¶ 110). Defendants also allegedly breached the contract by requiring Plaintiffs to pool their tips to share with non-tipped employees, and by failing

---

support for breach of the employment contract with the employees, the unjust enrichment for Tom Brown's itself, and the conversion of the Plaintiffs' tips. Those facts and issues are identical for all class members." (Doc. 78, at 6).

to pay Plaintiffs a time-and-a-half rate for any hours worked over 40 in a week.  (*Id.* ¶¶ 109, 111.

"To prevail on a claim of unjust enrichment under Alabama law, a plaintiff must show that: (1) the defendant knowingly accepted and retained a benefit, (2) provided by another, (3) who has a reasonable expectation of compensation." *Portofino Seaport Village, LLC v. Welch*, 4 So.3d 1095, 1098 (Ala. 2008).  Retaining such a benefit manifests as "unjust" if "(1) the donor of the benefit acted under a mistake of fact or in misreliance on a right or duty, or (2) the recipient of the benefit engaged in some unconscionable conduct, such as fraud, coercion, or abuse of a confidential relationship." *Matador Holdings, Inc. v. HoPo Realty Invs., L.L.C.*, 77 So. 3d 139, 146 (Ala. 2011) (cleaned up).  To support their unjust enrichment claim, Plaintiffs allege Defendants did not pay them "[f]or all the hours they suffered or were permitted to work," and they "unlawfully reduced Plaintiffs' . . . compensation by subjecting them to an illegal tip-pool for which they never agreed to participate and from which they deducted shares for other non tip earning employees and for themselves."  (*Id.* ¶ 114).

"To support a claim for conversion, a plaintiff must prove (1) a wrongful taking, (2) an illegal assumption of ownership, (3) an illegal use or misuse of another's property, or (4) a wrongful detention or interference with another's property." *Synergies3 Tec Servs., LLC v. Corvo*, 319 So. 3d 1263, 1272 (Ala. 2020) (cleaned up).  Plaintiffs allege Defendants "exercised control over Plaintiffs' and class members' compensation and converted the same to their own benefit by subjecting those employees to an illegal tip-

41

pool from which Defendants deducted shares to defray costs of other non-tip earning employees and for themselves," and Defendants did so without intention of returning Plaintiffs' compensation to them.  (*Id.* ¶¶ 117-18).

None of Plaintiffs' state law claims refer to Defendants' alleged misreporting of income on a W-2 form, though that allegation serves as the basis of Plaintiffs' § 7434 claim.  True, the state law claims refer to the mandatory tip-pool contributions, as does the § 7434 claim.  However, each of the state law claims refers to the mandatory tip pool contributions themselves as the source of the alleged violations, while the § 7434 claim asserts as the alleged violation Defendants' alleged practice of not deducting tip-out amounts from the taxable income reported on employees' W-2 forms.  The state law claims and the § 7434 claim do not present the same cause of action, and contrary to Plaintiffs' assertion, the same core facts do not apply to all claims.  As discussed, the § 7434 claim requires showings of fraud and willfulness, yet none of the state law claims requires such showings.[14]  In addition, the breach of contract claim requires proof of an existing contract, whereas neither the § 7434 claim nor the other state law claims rests upon the existence of a contract.

As Plaintiffs' proposed class encompasses individuals who received erroneous

---

[14] The court notes an unjust enrichment claim may involve a showing that the recipient of the benefit engaged in fraud, coercion, or abuse of a confidential relationship, but it does not require such a showing, as retention of a benefit also may manifest as unjust if the donor acted under a mistake or fact or in misreliance on a right or duty.  *Matador Holdings,Inc. v. HoPo Realty Invs.*, L.L.C., 77 So. 3d 139, 146 (Ala. 2011).

W-2 forms, and the state class law claims address neither the erroneous reporting of information on W-2's nor the requisite showings of fraud or willfulness, Plaintiffs have not satisfied their burden of certifying the proposed class as to their state law claims. *See Brown,* 817 F.3d at 1234; *Green-Cooper*, 73 F.4th at 888.  Moreover, as the various claims manifest so many differences, Plaintiffs would struggle to prove the requirements of Rule 23 as to the state law claims, including the existence of common questions of law or fact, the typicality of the class representatives' claims, the predominance of common issues over individual issues, and the superiority of the class action form.  Accordingly, the court will deny Plaintiffs' motion for class certification as to the state law claims.

## CONCLUSION AND ORDER

In accordance with the foregoing, the court **PARTIALLY GRANTS** Plaintiffs' motion for class certification pursuant to Federal Rule of Civil Procedure 23.  For purposes of assessing Defendants' alleged violations of 26 U.S.C. § 7434, the court certifies the following class:

> All individuals who worked as a tip credit employee for Tom Brown's Restaurant in Madison and received a W-2 from Tom Brown's Restaurant for tax years 2020 or thereafter which overstated their income because of Tom Brown's policy of sharing their tips with other non tip credit employees.

However, Plaintiffs have not satisfied the requirements of Rule 23 as to their state law claims.  Accordingly, the court **DENIES** Plaintiffs' motion as to the state law claims.

**DONE** and **ORDERED** this 27th day of March, 2025.

HERMAN N. JOHNSON, JR.
UNITED STATES MAGISTRATE JUDGE